JOSEPH W. COTCHETT
(36324; jcotchett@cpmlegal.com)
PHILIP L. GREGORY
(95217; pgregory@cpmlegal.com)
PAUL N. McCLOSKEY
(24541; pmccloskey@cpmlegal.com)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone:      (650) 697-6000
Facsimile:      (650) 697-0577

STUART G. GROSS
(251019; sgross@grosskleinlaw.com)
**GROSS & KLEIN LLP**
The Embarcadero Pier 9, Suite 100
San Francisco, CA  94111
Telephone:      (415) 671-4628
Facsimile:      (415) 480-6688

SHARON E. DUGGAN
(105108; foxsduggan@aol.com)
ATTORNEY AT LAW
336 Adeline Street
Oakland, CA 94607
Telephone:      (510) 271-0825
Facsimile:      By Request

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BESS BAIR; TRISHA LEE LOTUS; JEFFREY HEDIN; DAVID SPREEN; CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation; ENVIRONMENTAL PROTECTION INFORMATION CENTER, a non-profit corporation; CALIFORNIANS FOR ALTERNATIVES TO TOXICS, a non-profit corporation; and FRIENDS OF DEL NORTE, a non-profit group,**<br><br>                    **Plaintiffs,**<br>          **v.**<br><br>**CALIFORNIA DEPARTMENT OF TRANSPORTATION and MALCOLM DOUGHERTY in his official capacity as Director of the California Department of Transportation,**<br><br>                    **Defendants.** | Case No.<br><br>**COMPLAINT**<br><br>**(National Environmental Policy Act; Wild and Scenic Rivers Act; Administrative Procedure Act; Declaratory Judgment Act)** |

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................................. 1

I.    PARTIES .................................................................................................................. 13

    A.    Plaintiffs ......................................................................................................... 13

    B.    Defendants ...................................................................................................... 17

II.   JURISDICTION ....................................................................................................... 18

III.  VENUE ..................................................................................................................... 19

IV.   INTRADISTRICT ASSIGNMENT ......................................................................... 19

V.    OUR RICHARDSON GROVE AND CALTRANS' PLAN FOR ITS DESTRUCTION ......... 19

    A.    Driving Through History ................................................................................ 19

    B.    Destroying Our Redwoods .............................................................................. 21

    C.    The Grove is Threatened by Trucks ............................................................... 23

    D.    Caltrans Failed to Properly Provide for Public Review .................................. 28

    E.    Caltrans' Draft EA Was Deficient ................................................................. 29

    F.    The Original EA/FONSI Failed to Remedy the Draft EA's Deficiencies .............................. 33

    G.    Caltrans Has Failed to Correct Its Errors Identified by the *Bair* Court or Otherwise Address the Shortcomings in the Original EA/FONSI .................................................. 37

    H.    Caltrans' 2017 Approvals  Fail To Comply With NEPA Or Correct Errors Identified By The *Bair I* Court Or Otherwise Address The Shortcomings In The 2010 EA/FONSI ........................... 42

VI.   PLAINTIFFS HAVE COMPLIED WITH ALL PROCEDURAL REQUIREMENTS .......... 49

    A.    Irreparable Harm and Arbitrary and Capricious Action ................................. 49

    B.    Exhaustion of Administrative Remedies ......................................................... 49

    C.    Standing ........................................................................................................... 50

    D.    Attorneys' Fees ............................................................................................... 50

CLAIMS FOR RELIEF .......................................................................................................... 50

FIRST CLAIM FOR RELIEF (Violation of NEPA) ............................................................. 50

SECOND CLAIM FOR RELIEF (Violation of NEPA - Purpose and Need) ....................... 51

THIRD CLAIM FOR RELIEF (Violation of NEPA - Failure to Evaluate Impacts) ........... 52

FOURTH CLAIM FOR RELIEF (Violation of NEPA - Failure to Evaluate Alternatives) ............... 54

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

FIFTH CLAIM FOR RELIEF (Violation of NEPA - Response to Comments) ................................. 56

SIXTH CLAIM FOR RELIEF (Violation of NEPA - Failure to Circulate EA Prior to Adoption of FONSI) ......................................................................................................................................... 57

SEVENTH CLAIM FOR RELIEF (Violation of NEPA - Failure to Prepare an EIS)....................... 58

EIGHTH CLAIM FOR RELIEF (Violation of Section 4(f)) ............................................................... 59

NINTH CLAIM FOR RELIEF (Violation of Wild and Scenic Rivers Act) ...................................... 60

TENTH CLAIM FOR RELIEF (Violation of APA)............................................................................. 61

ELEVENTH CLAIM FOR RELIEF (Declaratory Judgment Act) ...................................................... 62

TWELFTH CLAIM FOR RELIEF (Injunctive Relief)........................................................................ 64

PRAYER FOR RELIEF ....................................................................................................................... 64

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

Plaintiffs Bess Bair, Trisha Lee Lotus, Jeffrey Hedin, David Spreen, the Center for Biological Diversity, Environmental Protection Information Center, Californians for Alternatives to Toxics, and Friends of Del Norte (hereinafter collectively referred to as "Plaintiffs") allege as follows based on information and belief, except where specifically indicated:

**INTRODUCTION**

1.      This action represents the third round, in the ongoing battle of trucks versus trees. More specifically, Plaintiffs are compelled once again to seek assistance from this Court in compelling the California Department of Transportation ("Caltrans") to meet its obligations to adequately evaluate and consider the environmental impact of a proposed highway widening project, through the ancient old-growth redwoods of Richardson Grove State Park ("Richardson Grove" or the "Park"), which Caltrans has misnamed the "Richardson Grove Operational Improvement Project" and which is referred to herein as the "Proposed Project" or "Richardson Grove Project."  The Proposed Project is a major highway construction project.

2.      Richardson Grove provides the gateway to majestic old-growth redwoods unique to California's northern coast.  U.S. Highway 101 threads through the Park for approximately a mile.  Rated as one of the 100 finest state parks in America, thousands of visitors annually trek to this historic gem, seeking to enjoy the awe, reverence, and spirituality of the Richardson Grove. Visitors are offered a true glimpse of history as they drive amidst old-growth redwoods ranging between 1,000 and 3,000 years old, some as large as 18 feet in diameter, immediately adjacent to or abutting Highway 101.  In some areas the redwoods and other trees cause the narrowing of the two-lane highway to only 22 feet in width, with shoulders of 2 feet or less. The ancient redwood forest of Richardson Grove, furthermore, provides critical and essential habitat for numerous species of Northwest coastal California plants and animals that have evolved in conjunction with its redwoods.  The survival of these plants and animals depends on the continued survival of the Richardson Grove.

3.      At a time in which Californians are experiencing an increasing disappearance of the State's natural wonders at an alarming and accelerating rate, Caltrans once again is attempting to plow through a destructive and needless highway widening project that will both

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                          1

1  waste millions of public money and likely destroy one of the last remaining irreplaceable stands

2  of ancient old-growth Redwoods, without studying the severe and permanent environmental

3  consequences.

4         4.      This action follows successful state and federal court challenges to Caltrans'

5  initial 2010 approval of the Richardson Grove Operational Improvement Project.  In both actions

6  the courts found Caltrans' environmental review lacking and not in compliance with governing

7  law. Ultimately Caltrans rescinded all of its approvals: on June 26, 2014, Caltrans set aside and

8  rescinded its approval of the Richardson Grove Operational Project and certification of its 2010

9  Final Environmental Impact Report ("2010 FEIR"), and on November 17, 2014, Caltrans

10  withdrew and rescinded its 2010 Finding of No Significant Impact ("2010 FONSI").

11         5.      Caltrans first approved the Richardson Grove Project and its combined "Final

12  Environmental Assessment/Finding of No Significant Impact (FONSI)" on May 18, 2010.

13  *Federal Register*/Vol. 76, No. 243/Monday, December 19, 2011/Notices, [78717].  On

14  September 27, 2010, many of the same plaintiffs as in this action filed a federal court challenge

15  to these actions and alleging violations of NEPA, Wild and Scenic Rivers Act and Section 4(f) of

16  the Department of Transportation Act of 1966, 49 U.S.C. § 303, also codified at 28 U.S. § 138.

17  *Bair v. State of California Department of Transportation* ("*Bair I*"), No. 10-4360-WHA.

18         6.       On April 4, 2012, in *Bair I*, Dkt. No. 146, this Court adhered to its previous

19  order, Dkt. 84 – which had preliminarily enjoined work on the Proposed Project – with an Order

20  granting summary judgment to the Plaintiffs (the "*Bair I Order*").  In the *Bair I Order*, this Court

21  questioned "whether Caltrans truly took a 'hard look' at the effects of the project" and made "an

22  informed decision," as required by the law.  *Bair I Order* at 8.  Accordingly, this Court ordered

23  that Caltrans prepare:

24              "a revised EA [("Environmental Assessment")] that corrects the
               data inaccuracies identified [in the Order] and assesses the impacts
25              of the project through the lens of a correct analysis . . .
               Alternatively, Caltrans may proceed directly to conducting an EIS
26              [("Environmental Impact Statement")].

27  *Id.*, at 10.

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                              2

7. The referenced "data inaccuracies" refer to various discrepancies and omissions that this Court identified in Caltrans' original final EA ("Original EA") and Finding of No Significant Impact ("FONSI," collectively with the original final EA, "Original EA/FONSI"), approved on May 18, 2010. These "data inaccuracies" included, without limitation, completely omitting from its maps an old-growth redwood tree less than 15 feet from the pavement, miscalculating by almost 20 inches the diameter of another old-growth redwood in the path of the Proposed Project. Caltrans' statements in responses to comments on the draft EA ("Draft EA") that, on the one hand, stated Caltrans did not intend to cut "woody roots" for redwoods but, on the other hand, stated Caltrans did not know where those "woody roots" were so Caltrans may end up cutting them. *Id.* at 8-9.

8. The Court's concern, however, was not the numerous data inaccuracies in-and-of-themselves; rather, this Court expressed concern with the effects that such erroneous data had on the analyses based thereon. *See id.* at 9 (finding that because of Caltrans' data errors "the analysis of the project's impacts in relation to . . . the grove as a whole, are based off of false data . . ."). Thus, in remanding the matter to Caltrans "to prepare a revised EA and record in accordance with the instructions above," *id.* at 12, this Court clearly stated that Caltrans should not simply correct its data errors but also correct the analyses based on that erroneous data. The Court further instructed:  "In its revised EA (or EIS), Caltrans should give serious consideration to the other significant arguments made by plaintiffs in their motion," which arguments were left unaddressed by the Court and are thus preserved. *Id.* at 10.

9. On September 18, 2013, Caltrans did not issue a Revised EA or Environmental Impact Statement ("EIS"), but instead issued a document entitled "Supplement to the Final Environmental Assessment" ("Supplement to the Original EA/FONSI"). On January 24, 2014, Caltrans approved this unauthorized "Supplement to the Original EA/FONSI," and based, in part thereon, re-validated its Original EA/FONSI, which it had originally approved on May 18, 2010, finding that it "remains valid" ("Re-Validation of Original EA/FONSI"). Caltrans published notice of its approval of the Proposed Project based on the Re-Validation of Original EA/FONSI in the Federal Register on February 26, 2014, imposing a 150-day statute of limitation for any

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                  3

1  claim seeking judicial review of these actions on the Richardson Grove Project. *Federal*

2  *Register*/Vol. 79, No. 38/Wednesday, February 26, 2014/Notices, [10870].

3      10.    Before the time ran on the 150-day period, Caltrans rescinded its approval of the

4  Richardson Grove Project. Caltrans did not at that time rescind its 2010 Original EA/FONSI,

5  2013 Supplement to the Original EA/FONSI or Reevaluation of the FONSI. Instead, Caltrans

6  maintained those approvals and allowed the clock to tick on the deadline to file any judicial

7  challenge. As a consequence, many of the same plaintiffs as in this case filed a second action on

8  the 150th day, challenging Caltrans' 2014 approvals. *Bair v. California Department of*

9  *Transportation* ("*Bair II*"), No. 14-03422 WHA.

10      11.    In its Supplement to the Original EA/FONSI and Re-Validation of Original

11  EA/FONSI, Caltrans disregarded this Court's specific instructions in the *Bair I Order.* In its

12  *Supplement* to the Original EA/FONSI – not a "revised EA (or EIS)," as ordered by this Court –

13  Caltrans supposedly sought to correct some of the data errors in the Original EA/FONSI.

14  However, Caltrans did nothing to address the erroneous analyses that were based on the

15  erroneous data. Indeed, those analyses and the conclusions based thereon remain unchanged and

16  were explicitly "re-validated" by Caltrans. Furthermore, there is nothing in the Supplement to the

17  Original EA/FONSI that indicates Caltrans considered *any* of the other issues raised by Plaintiffs

18  in *Bair I.*  Indeed, the Supplement to the Original EA/FONSI states that—aside from limited data

19  corrections, revisions concerning the Proposed Project's impacts on the marbled murrelet, and a

20  revision concerning a guardrail—"all other information and chapters in the original Final EA

21  remain accurate," including the analyses that this Court specifically found, in the *Bair I Order*,

22  were "based off of false data" that the Supplement to the Original EA/FONSI supposedly to

23  corrected. Indeed, the "Environmental Consequences" section of the Original EA/FONSI is

24  among those that Caltrans apparently claims remain accurate.

25      12.    Caltrans left unchanged the analyses and conclusions it reached based on the

26  erroneous data. Clearly this is not what the Court intended when it ordered Caltrans to prepare a

27  "revised EA (or EIS)," as those analyses and conclusions should have been revisited.

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                    4

13.    Furthermore, in the face of this Court's instructions that it "give serious consideration to the other significant arguments made by plaintiffs," Caltrans not only ignored those arguments in its preparation of the Supplement to the Original EA/FONSI, it expressly refused to consider or respond to public comments and concerns regarding the very same issues raised in those "significant arguments."

14.    The *Bair I Order* provided Caltrans with the opportunity to not only rectify its failure to give a hard look at the Proposed Project's environmental impacts, as required by the NEPA, but also Caltrans' failures to comply with several other federal environmental laws that apply due to the uniquely important and precious environmental context through which Caltrans seeks to create an industrial artery. These other environmental laws include: Section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 303, also codified at 28 U.S. § 138, which applies because of the Proposed Project's location in a state park; the Wild and Scenic Rivers Act (16 U.S.C. § 1271, *et seq.*), which applies because the Proposed Project is just yards from the banks of the wild and scenic designated South Fork of the Eel River.

15.    Only after *Bair II* was filed, did Caltrans withdraw and rescind its Finding of No Significant Impact (FONSI), which was issued on May 18, 2010." *Federal Register*/Vol. 79, No. 228/Wednesday, November 26, 2014/Notices, [70612].  *Bair II* was then dismissed.

16.    Not willing in 2014 to issue an Environmental Impact Statement, or even a "Revised Environmental Assessment," for noticed public review and comment, Caltrans instead has now developed multiple documents comprised of several hundred pages, and relied upon earlier rescinded documents, all in an effort to justify a second approval of the Proposed Project, and without consolidation or public review.

17.    On May 22, 2017, Caltrans reapproved the Richardson Grove Project, claiming changes to the Proposed Project, as well as the environmental impacts from those changes, are "minor," while, at the same time, attempting to justify its conclusion based on numerous documents that have been developed over the course of nearly four years and comprise hundreds of pages. In doing so, Caltrans failed to comply with its duty to ensure public participation in its

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                        5

1  decision-making process, particularly in the face of the significant changed circumstances that

2  invalidated its previous decisions.

3      18.    This action seeks to set aside Caltrans' <u>May 22, 2017</u> approvals of the Richardson

4  Grove Project and its accompanying environmental findings, including a Finding of No

5  Significant Impact ("2017 FONSI") and Caltrans' 2010 Final Environmental Assessment and the

6  2013 Supplement, which Caltrans now collectively characterizes as the "Revised EA" that was

7  ordered in *Bair I.*

8      19.    The shortcomings in Caltrans' response to the instructions contained in, and the

9  opportunities provided by, the *Bair I Order* are symptomatic of the haphazard and slipshod

10  manner in which Caltrans has observed (and failed to observe) its obligations to analyze the

11  environmental impacts of the Proposed Project.

12      20.    Caltrans claims to have corrected the glaring errors that accompanied Caltrans'

13  initial 2010 approval of the Richardson Grove Project. However, Caltrans has left largely

14  unchanged the analyses and conclusions previously reached based on erroneous data, but has

15  purposely prevented exposure of its new conclusions and claimed analyses to any public scrutiny

16  or comment. Further, given the various documents now presented and the internal

17  inconsistencies between those documents, as well as the inconsistencies between certain of those

18  documents and the Proposed Project as now conceived, it is not even clear what documents and

19  analyses apply to the Proposed Project. This is particularly true as to the environmental review

20  process required by NEPA. Caltrans has cobbled together a series of separate documents in

21  piecemeal fashion, which do not comprise a unified or cogent analysis. Clearly this is not what

22  the Court intended when it ordered Caltrans to develop a Revised Environmental Assessment, in

23  order to revisit those analyses and conclusions, and is not allowed under NEPA.

24      21.    Other than incompetence or intention, the only explanation for why Caltrans has

25  not, instead, used the four and half years since the issuance of this Court's decision in *Bair I* to

26  simply prepare an EIS is that it seeks to avoid the consequences of doing so. Specifically, the

27  consequences that Caltrans seeks to avoid by foregoing preparation of EIS include: the

28  requirement that it engage in the more fulsome analysis required of an EIS; the requirement that

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT        6

1    it expose the EIS to full public review and comment; and the requirement that it subject the

2    Proposed Project to a full, non-programmatic review under Section 4(f) of the Transportation

3    Act.

4        22.    Concerning the latter, Section 4(f) of the Transportation Act embodies "the

5    national policy that special effort should be made to preserve the natural beauty of the

6    countryside and public park and recreation lands, wildlife and waterfowl refuges, and historic

7    sites." 23 U.S.C. § 138. Accordingly, where, as here, a Proposed Project requires the use of park

8    land, the Federal Highway Administration ("FHWA")—and in this case, Caltrans, in the shoes of

9    FHWA—must conduct an added layer of review to ensure that "there is no feasible and prudent

10   alternative to the use of such land, and (2) such program includes all possible planning to

11   minimize harm to such park, recreational area, wildlife and waterfowl refuge, or historic site

12   resulting from such use." *Id.*

13       23.    Caltrans did not conduct a full Section 4(f) analysis of the Proposed Project, but

14   rather a more minimal "programmatic review," which can only done concerning projects that

15   involve "certain minor uses" of parkland. 23 C.F.R. 774.3(d). A project does not qualify for such

16   a minimal programmatic Section 4(f) review if it requires the preparation of an EIS. Thus, by

17   evading the requirement that it prepare an EIS, Caltrans has sought not only to avoid the more

18   fulsome analysis of the Proposed Project that an EIS would provide, but also the more fulsome

19   analysis of the Proposed Project that a full Section 4(f) would provide.

20       24.    This leaves one wondering: What is it concerning this Proposed Project that

21   Caltrans wants so badly to avoid subjecting to a fulsome analysis?

22       25.    The answer is a proposed project that is ill-conceived, highly unpopular,

23   unnecessary, and destructive to some of the last remaining ancient redwoods on Earth.

24       26.    As result of its pronounced aversion to conducting the type of common-sense

25   environmental review that the law requires for a project such as this, Caltrans now seeks based

26   on hodge-podge collection of documents, to engage in a project that would put at risk destruction

27   of California's most irreplaceable public resources, ancient redwoods and the habitat they

28   provide, in order to make it easier for large commercial trucks to pass through state parks; and it

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1   refuses to meet its legal obligations to adequately analyze the environmental impacts thereof.

2   With its approvals, Caltrans places these ancient redwoods and public resources at ecological

3   risk and, once severely damaged or destroyed, these ancient redwoods could take literally

4   thousands of years from which to recover.

5         27.    Visitors to Richardson Grove State Park—through which the Proposed Project

6   would go—stroll among old-growth redwoods that have stood for as many as 3,000 years,

7   measure as much as 18 feet in diameter, and reach heights of 300 feet. Willing to recklessly put

8   these old-growth redwoods at risk of destruction, Caltrans has proposed a project to widen the

9   one mile stretch of U.S. Highway 101 that passes through Richardson Grove Park that by

10   Caltrans' own admission, threatens to destroy these ancient, irreplaceable redwoods by cutting

11   their roots and compacting hundreds of cubic yards of soil and paving over the roots.

12         28.    Indeed, the Original EA/FONSI, which Caltrans continues as a basis for its

13   project approvals, states: "This work will involve the structural root zones of approximately 66

14   old-growth redwood trees ranging from 3 to 18 feet in diameter . . . "  Original EA/FONSI at 21.

15   The Original EA/FONSI continues:  "Additional paving and the placement of shoulder backing

16   could cause soil compaction and disturbance within the structural root zones of old-growth

17   redwoods.   Studies have shown that compaction of the soil within the root zone can have an

18   adverse effect on these trees (Arnold 1973).  ***Adverse effects to old growth trees may be a***

19   ***significant impact to this unique natural community."***  *Id*. at 22.  (Emphasis added).

20         29.    In the Supplement to the Original EA/FONSI, Caltrans raised the number of old-

21   growth redwoods whose root zones would "intersect [with] the proposed ground disturbance

22   areas of the project" from **66** to **116**.  However, paradoxically, Caltrans failed to revisit the

23   analyses, or the conclusion based thereon, contained in the Original EA/FONSI, which states that

24   the Proposed Project "would not significantly impact the root health of the old growth trees

25   adjacent to the construction." Instead, it simply "re-validated" both documents.

26         30.    In its most recent iteration, Caltrans changes these figures yet again, and identifies

27   **109** old growth redwoods whose root zones would be subject to ground disturbance, and

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT      8

1    increases to **78** the number of old growth redwoods whose "structural root zones" would be

2    subjected to ground disturbing activity.

3           31.    Caltrans seeks to justify the environmental risks posed by the Proposed Project for

4    a single purpose:  widening the road would allow lifting a general restriction on the passage

5    through Richardson Grove of large, commercial Surface Transportation Assistance Act of 1982

6    (or "STAA") trucks, transforming the road through the Grove into an unrestricted industrial

7    artery. STAA trucks carry trailers that are 8 to 13 feet longer than what are known as "California

8    legal" trailers.  Presently, these elongated trucks are generally prohibited from going through

9    Richardson Grove Park; however, as Caltrans acknowledges, STAA trucks already regularly

10   pass through the Grove with a California Highway Patrol ("CHP") escort, by virtue of granted

11   exemptions, and pass through without incident, making the Proposed Project unnecessary.

12   Indeed, the approximately $21 million that Caltrans estimates the Proposed Project would cost

13   could, using the current average salary numbers, pay the entire salary of a CHP Officer posted at

14   the Grove to escort the occasional STAA truck, for 178 years.

15          32.    Despite the probable destruction of the ancient redwoods in the Grove and other

16   impacts on the human environment that the Project would create, Caltrans has, through its

17   actions and disregard of its other legal obligations, attempted to railroad the Proposed Project to

18   completion without adequately studying the Proposed Project's potentially severe and permanent

19   human environmental consequences and without explaining or justifying the Proposed Project's

20   purpose or need.

21

22

23

24

25

26

27

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                9

33.     The cover of Caltrans's Original EA/FONSI and its "Supplement" (displayed below), both of which Caltrans characterizes as part of a so-called "Revised EA," illustrates the Proposed Project's essential problem – the road through the Grove at its current width already cuts so close to the old-growth trees that any widening would cause a devastating impact.



34.     While less obvious—though apparent in dangerously leaning tree in the center of the picture—the impact that the Proposed Project would have on the root zones of the old-growth redwoods, which lay in the path of the Proposed Project, would be equally devastating.

35.     Indeed, Comment No. 9 submitted by the California State Department of Parks and Recreation North Coast Redwoods District (the "State Parks") to the Draft Environmental Impact Report/Environmental Assessment ("Draft EA") states: "The hardened surface associated with the roadbed and shoulder is a significant adverse effect on the health of any mature tree, including old-growth redwood, where it encroaches into that tree's critical root zone . . . However the [Draft EA] does not document whether or not the proposed action will increase the cumulative amount of hardened surface on the critical root zone or decrease it.  Unless such a detail analysis is conducted, the significance of the proposed action on old-growth redwoods cannot be evaluated.  Once this information is provided, it can be evaluated for the significance

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                          10

1   of the impact to the trees.  If that information is not provided, there is not enough substantial

2   evidence to make a finding of significant or less than significant."

3      36.   State Parks further states in its Comment 31 to the Draft EA: "The [Draft EA] . . .

4   does not provide an assessment of the number of trees that will have their structural root zone

5   compromised through the placement of an impervious surface within the structural root zone or

6   an estimate of the number of trees that will have structural roots severed.   Without such an

7   assessment the State Parks cannot adequately assess the proposed actions impacts on old-growth

8   redwoods and other mature trees.  The Department therefore must assume that the proposed

9   action will result in significant adverse effects to old-growth redwoods and that adequate

10  mitigation needs to be developed."

11     37.   Caltrans, however, not only ignored these Comments and numerous other likely

12  environmental consequences of its Proposed Project, but also denied Plaintiffs and the hundreds,

13  if not thousands, of other concerned persons a meaningful opportunity to review and comment

14  upon the Proposed Project and its stated justifications.  Caltrans also gave no meaningful

15  consideration to the numerous alternatives that existed to its destructive plans, including simply

16  granting more exceptions to operators of STAA trucks that desired to pass through the Grove,

17  and failed to properly consider or explain the Proposed Project's purpose or need.

18     38.   Traveling under these redwoods, which tower over Highway 101 as it passes

19  through Richardson Grove, is for many people the only experience they will ever have of these

20  utterly unique and majestic forms of nature.  No other plant, tree, or animal in the world

21  compares to the size of ancient redwoods, and for many first-time travelers of Highway 101

22  through Richardson Grove the experience is profound and deeply moving.

23     39.   In an inept attempt to mask the true purpose of the Proposed Project, which is

24  lifting the general limitation on passage of STAA trucks through the Grove to create an industrial

25  artery, Caltrans initially tried to justify the Proposed Project on safety concerns.  However,

26  Caltrans was not able to offer any evidence in support of those purported safety concerns, other

27  than the results of a computer model. These computer results were contrary to the evidence, such

28  as accident reports, which failed to support any such safety issues.  Despite (or because of) this

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1  divergence between observed reality and the results of its computer model, Caltrans never

2  provided the public with information regarding how the computer model was constructed; thus,

3  the public was never given the opportunity to meaningfully challenge the computer model's

4  results.

5     40. Caltrans ultimately admitted the Proposed Project would not solve any safety

6  problems, real or imagined.  The EA states: "***The project is not a safety project***, but an

7  operational improvement project to lift the STAA restriction at this location. . . . The primary

8  purpose of the Project is to lift the restriction on STAA vehicles on the portion" of Highway 101

9  that runs through Richardson Grove State Park.

10     41. Caltrans proposes to engage in a multimillion dollar project and to endanger the

11  survival of giant old-growth redwoods that have towered over the area for millennia, not to solve

12  any safety issues, but rather to let bigger commercial trucks pass through a one mile stretch of

13  road without the hassle of seeking an exemption and CHP escort.  The short-sightedness of this

14  Proposed Project is dumbfounding and contrary to federal law.

15     42. Plaintiffs hereby challenge Caltrans' approval of the Proposed Project, its

16  approval of the Original EA/FONSI, its approval of the unauthorized Supplement to the Original

17  EA/FONSI, its issuance of the 2017 FONSI, and its failures to have engaged in the required

18  environmental analyses, as violations of NEPA, the Department of Transportation Act, their

19  related regulations, and other applicable law, and seek an order by this Court enjoining Caltrans

20  from taking any further action on the Proposed Project until Caltrans both meets all applicable

21  legal requirements and complies with the *Bair I Order*.  On May 1, 2017, Caltrans approved its

22  2017 FONSI and Revised EA, which Caltrans characterizes as the 2010 Final Environmental

23  Assessment, the 2013 Supplement to the Original EA/FONSI, and revisions and updates from

24  the 2017 FONSI.  Caltrans published notice of its approval in the Federal Register on June 5,

25  2017. *Federal Register*/Vol. 82, No. 106/Monday, June 5, 2017/Notices, [25906].  This case

26  challenges those actions and reasserts claims from 2010 because Caltrans continues to violate the

27  law in its reliance on and re-approval of its 2010 actions.  This case challenges the final agency

28  actions as announced in the Federal Register on June 5, 2017.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT    12

43.     These individual Plaintiffs and the organizational Plaintiffs' members are committed to taking all possible steps to preserve Richardson Grove State Park's old-growth redwoods and the habitat they provide for posterity.  These individual Plaintiffs and the organizational Plaintiffs' members are informed and believe the Proposed Project would cause irreparable harm to those redwoods and that habitat.  Plaintiffs have exhausted any and all administrative remedies prior to filing this Complaint, to the extent legally required to do so.

44.     The redwoods of Richardson Grove are a profound natural resource.  Federal law prohibits the sacrificing of these old-growth redwoods for immense trucks in such a haphazard and capricious way.  The Grove should be preserved for the trees, not destroyed for the trucks.

# I.     PARTIES

## A.     Plaintiffs

45.     Plaintiff BESS BAIR is the granddaughter of Bess and Fred Hartsook.  In 1919, her grandparents honeymooned in a cabin six miles south of Garberville, California.  The cabin was immediately below Richardson Grove State Park.  During the 1920's, Fred Hartsook purchased the honeymoon cabin and extended it into a resort, comprising 37 acres of pristine redwood forest, known as The Hartsook Inn.  The resort became a major attraction for Hollywood celebrities, with guests including Mary Pickford and Bing Crosby.  The Hartsook Inn survived under a succession of owners until the 1990s, when the last operator sold the property to the Save-The-Redwoods League.  Bess was raised in Northern California, making frequent visits to the redwoods in and around the Richardson Grove State Park.  She continues to visit these same redwoods as an adult and intends to do so in the future.  Since 1975, Bess has resided in San Francisco County, California.

46.     Plaintiff TRISHA LEE LOTUS is the great granddaughter of Henry Devoy, who in 1922 transferred to the State of California the 120 acres which became the initial acreage of the Richardson Grove State Park.  Trisha was born in Santa Rosa and every summer as a child visited the redwoods in and around the Richardson Grove State Park.  She continues to visit these same redwoods as an adult and intends to do so in the future.  Since 1998, Trisha has been a resident of Humboldt County, California.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                   13

47.     A retired licensed contractor and a disabled Vietnam Veteran, Plaintiff JEFFREY HEDIN resides in Piercy, California.  Jeff is an elected commissioner with the Piercy Fire Protection District, members of which respond to emergency calls in Humboldt and Mendocino Counties.  While he is performing his work duties, Jeff drives on Highway 101 through Richardson Grove State Park.  Jeff is also a dedicated volunteer and leader in efforts to protect and save local parks, including Standish Hickey State Recreation Area in Humboldt County.

48.     Plaintiff DAVID SPREEN has lived in Humboldt County for decades. After graduating from Humboldt State University (Math '76), David and his wife decided to live and raise a family in Humboldt County.  David accepted a position with a wholesale floor covering distributor based in the San Francisco Bay Area and was promoted to Eureka warehouse branch manager, which required coordinating logistics between local retail clients and numerous manufacturers located in California and around the nation.  In 2001, David opened Dave Spreen Enterprises to offer consulting services to clients in the flooring industry interested in doing business in China.  David has served on the Freshwater Educational Foundation, the Freshwater School Board, and the Eureka Adult School Business Advisory Council.  David has previously attempted to review Richardson Grove Project records at Caltrans, only to be denied access.

49.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("CBD") is a non-profit New Mexico corporation with offices in Alaska, Arizona, California, Illinois, Minnesota, Nevada, New Mexico, Oregon, Vermont, and Washington, D.C.  CBD is actively involved in wildlife and habitat protection issues throughout the United States, and has members throughout our country, thousands of whom reside in California.  CBD's members and staff include individuals with educational, scientific, spiritual, recreational and other interests in protection of ancient redwoods and the species which depend on those trees, including the Marbled Murrelet, the Northern Spotted Owl and anadromous salmonids – including SONCC coho, CC Chinook and NC Steelhead.  CBD's members and staff enjoy the biological, recreational and aesthetic values of the California parks where species such as the Marbled Murrelet, the Northern Spotted Owl and anadromous salmonids – including SONCC coho, CC Chinook and NC Steelhead – live, including the Richardson Grove State Park.  CBD's members and staff have participated in

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1   efforts to protect and preserve the habitat essential to the continued survival of the Marbled

2   Murrelet, the Northern Spotted Owl, and anadromous salmonids – including SONCC coho, CC

3   Chinook and NC Steelhead.  CBD's members and staff intend to visit Richardson Grove State

4   Park in the future to enjoy, appreciate, view, and study the ancient redwoods and to seek out and

5   observe the Northern Spotted Owl, Marbled Murrelet, anadromous salmonids – including

6   SONCC coho, CC Chinook and NC Steelhead – in their natural habitat.  CBD brings this action

7   on its own behalf and on behalf of its adversely affected members and staff.

8        50.    Plaintiff ENVIRONMENTAL PROTECTION INFORMATION CENTER

9   ("EPIC") is a non-profit public interest organization formed to promote environmental values

10  and environmental protection.  EPIC is located in the State of California and has approximately

11  2,000 members, who live throughout California.  EPIC is beneficially interested in the aesthetic

12  enjoyment and continued productivity of land, forest and other water resources, in the

13  preservation of wildlife and protected species including the Marbled Murrelet, the Northern

14  Spotted Owl and anadromous salmonids – including SONCC coho, CC Chinook and NC

15  Steelhead – at self-perpetuating population levels, in protection of ancient redwoods, watersheds,

16  and in protection of other natural resources and our environment.  Members of EPIC travel

17  throughout California for personal, aesthetic and recreational pursuits, including hiking, bird

18  watching and enjoying California's incredible beauty.  Members of EPIC regularly visit and

19  enjoy California State Parks, including the remarkably beautiful and majestic Richardson Grove

20  State.  EPIC's members depend for their livelihood, health, culture and well-being on the

21  viability of vegetation and land throughout California.  EPIC's members rely upon water from

22  throughout California.  Members of EPIC also observe, study, recreate, gather or otherwise enjoy

23  the unique biologic, scientific and aesthetic benefits of Richardson Grove State Park, which

24  EPIC members experience as important and unique State and public resources.   EPIC's

25  members intend to continue visiting Richardson Grove State Park in the future, in pursuit of

26  these interests and benefits.

27        51.    Plaintiff CALIFORNIANS FOR ALTERNATIVES TO TOXICS ("CATs") is a

28  non-profit public interest corporation, which has advocated for thirty years on behalf of its

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                          15

1    members to enable their control over toxic chemicals in the environment.  CATs seeks to advise

2    and advocate public concerns regarding toxic chemicals in the environment through organizing,

3    educating, advocating, and building community leadership.  This mission is grounded in a

4    broader concern for the sustainability of the environment.  CATs and its members are actively

5    involved in local, regional, national, and international government and regulatory processes

6    concerning the exposure, use and removal of toxic chemicals, including toxic lead and its

7    constituents.  CATs is a region wide organization with its office in Humboldt County, California.

8    Members of CATs depend for their livelihood, health, culture, and well-being on the viability of

9    healthy environmental conditions throughout California.  Its members live throughout California.

10   Members also observe, study, recreate, gather, or otherwise enjoy the biologic, scientific, and

11   aesthetic benefits of clean water and land throughout California.  Members of CATs recreate

12   within and along the wild and scenic Eel River and in Richardson Grove State Park, and intend

13   to continue doing so in the future.  Members of CATs have an interest in knowing California

14   remains alive with wildlife and natural wonders, always beautiful and available to enjoy and

15   utilize.

16   52.    Plaintiff FRIENDS OF DEL NORTE ("Friends") is a non-profit public interest

17   group established in 1973 in Crescent City and Gasquet, California, designed to protect the local

18   environment and educate our citizenry on the benefits of planning for living in a pristine setting.

19   For more than forty years, Friends has volunteered resources to foster public dialogue about

20   natural resources throughout the region, by attending federal, state, and local meetings and public

21   hearings working to influence elected leaders in planning for a healthy future in Del Norte

22   County and its bioregion.  In part through monitoring local planning issues, Friends' two

23   hundred local and northern California members have tirelessly worked to protect the pristine

24   qualities of the wild and scenic rivers of Northern California, salmon and steelhead habitat, the

25   scenic corridors of Highways 101 and 199, ancient redwood forests, the Lake Earl Coastal

26   Lagoon, and the wild Pacific coastline.  Friends believes that, without deliberate attention and

27   care, these great natural treasures will be compromised or degraded over time and lost to future

28   generations.  Friends is proud of its record of success in helping to foster the 40,000 acre

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                              16

1  expansion of Redwood National and State Parks, the 180,000 acre Siskiyou Wilderness Area, the

2  Smith River National Recreation Area in the Six Rivers National Forest, long-term protection of

3  the Point St. George Heritage Area through acquisition by Del Norte County, better management

4  of Lake Earl Coastal Lagoon resulting in higher biodiversity, and participation at the stakeholder

5  level to successfully promote the creation of the Marine Life Protection Act for Del Norte,

6  Humboldt, and Mendocino counties. Over the years, Friends has worked to protect the scenic

7  qualities of our local highways and to plan the Cushing Creek realignment project on Highway

8  101 to save old growth redwood trees bordering this scenic highway.  Friends will continue to

9  work with federal, state, and local agencies in planning to protect our natural resources.

10  Members of Friends recreate within and along the wild and scenic Eel River and in Richardson

11  Grove State Park, and intend to continue doing so in the future. Friends brings this action on its

12  own behalf and on behalf of its adversely affected members and staff.

13      53.     The above-described health, recreational, scientific, cultural, inspirational,

14  educational, aesthetic, and other interests of Plaintiffs would be adversely and irreparably injured

15  by Defendants' failure to comply with NEPA, Section 4(f) of the Department of Transportation

16  Act, the Wild and Scenic Rivers Act, the MSA, the ESA, their related regulations, and other

17  applicable law.  These are actual, concrete injuries to Plaintiffs and their members that would be

18  redressed by the relief sought herein.  Plaintiffs have no adequate remedy at law.

19      54.     Plaintiffs sue on behalf of themselves, their members, and their supporters.

20  Plaintiffs are comprised of residents of the State of California who are united by the following

21  common interests of law and fact:  Each Plaintiff is an "interested person" in the aesthetic

22  enjoyment and protection of California's public lands, including State Parks such as Richardson

23  Grove State Park, in the preservation of ancient redwoods, fish and wildlife species at self-

24  perpetuating population levels, in the protection of our environment, and in the protection of

25  water and air quality.

26  **B.    Defendants**

27      55.     Defendant CALIFORNIA DEPARTMENT OF TRANSPORTATION

28  ("Caltrans") is a public and state agency within the State of California. Caltrans is the lead

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1  agency for the Proposed Project under NEPA.  Caltrans is using federal funding from the Federal

2  Highway Administration ("FHWA").  Caltrans has executed a Memorandum of Understanding

3  Between the Federal Highway Administration and the California Department of Transportation

4  (the "MOU") under which FHWA assigned to and Caltrans assumed the delegation of authority,

5  pursuant to 23 U.S.C. § 327, to provide environmental review, consultation, or other such action

6  pertaining to the review or approval of a specific project such as Richardson Grove, as required

7  by federal environmental laws, including NEPA, 42 U.S.C. § 4331 *et seq.*; Section 4(f) of the

8  Department of Transportation Act of 1966, codified at 23 U.S.C. § 138 and 49 U.S.C. § 303, and

9  implementing regulations at 23 C.F.R. Part 774; the Wild and Scenic Rivers Act, 16 U.S.C. §

10  1271 *et seq.*; the MSA, 16 U.S.C. § 1801 *et seq.*; and the ESA, 16 U.S.C. §§ 1531*, et seq.*

11  Pursuant to this MOU, Caltrans is the agency which prepared and adopted the Original

12  EA/FONSI for the Proposed Project.  Caltrans approved the Richardson Grove Project and

13  adopted the Original EA/FONSI on May 18, 2010.  On January 24, 2014, Caltrans approved a

14  Supplement to the Original EA/FONSI, and revalidated the Original EA/FONSI, which was

15  described as a final agency action in a February 26, 2014 Federal Register Notice. Caltrans

16  subsequently rescinded those approvals. On May 2, 2017, Caltrans approved the 2017 FONSI as

17  part of a so-called "Revised EA" which also included the Original EA/FONSI and the

18  Supplement to the Original EA/FONSI, and on May 22, 2017 Caltrans again approved the

19  Richardson Grove Project.

20  56.  Defendant MALCOLM DOUGHERTY is the Director of the State of California

21  Department of Transportation.  As Director, Mr. Dougherty is responsible for maintenance and

22  operations of roadways comprising the California state highway system.  Mr. Dougherty is sued

23  in his official capacity.

24  **II.  JURISDICTION**

25  57.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises

26  under the laws of the United States.  This Court also has jurisdiction to review Caltrans' actions

27  in this case pursuant to 23 U.S.C. § 327(d) and the MOU. As stated in the MOU, Caltrans has

28  consented to and accepted the exclusive jurisdiction of the Federal courts for any matter arising

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                                          18

1  out of or relating to action for compliance, and/or enforcement of any of the responsibilities

2  assigned by the FHWA and assumed by Caltrans, including compliance of NEPA and Section

3  4(f) of the Department of Transportation Act and the Wild and Scenic Rivers Act.  The State of

4  California has consented to federal jurisdiction and waived any claim of sovereign immunity

5  pursuant to California Streets and Highways Code § 820.1.

6      58.    An actual controversy exists between the parties within the meaning of 28 U.S.C.

7  § 2201.  Final agency action exists that is subject to this Court's review under the Administrative

8  Procedure Act, 5 U.S.C. § 702 ("APA").  This Court may grant declaratory relief, and additional

9  relief, including an injunction, pursuant to 28 U.S.C. §§ 2201 and 2202, and 5 U.S.C. § 705, §

10  706(1), § 706(2)(A) & (D).

11  **III.**    **VENUE**

12      59.    Venue lies in this judicial district pursuant to 28 U.S.C. § 1391(e), because a

13  substantial part of the events or omissions giving rise to the claims at issue in this action

14  occurred in this judicial district.  The Proposed Project is located within this judicial district.

15  Plaintiffs reside and have offices in this district and certain of their organizational members

16  reside within this district.

17  **IV.**    **INTRADISTRICT ASSIGNMENT**

18      60.    A substantial part of the events and omissions giving rise to the claims in this case

19  impact all of Northern California and have occurred in various counties throughout the Northern

20  District, including the County of San Francisco.

21

22  **V.**    **OUR RICHARDSON GROVE AND CALTRANS' PLAN FOR ITS DESTRUCTION**

23      **A.**    **Driving Through History**

24      61.    In 1922, Henry Devoy transferred 120 acres to the State of California, to establish

25  what ultimately became Richardson Grove State Park.  At that time, a narrow dirt road wound

26  through this iconic redwood grove.  It was not until 1927, after creation of the Richardson Grove

27  State Park, that the road was first surfaced.  With improvement of the road and increased vehicle

28  traffic, thousands of visitors came to see these majestic redwoods and the name "Richardson

Grove" became synonymous with ancient redwoods.  Over time, Richardson Grove has expanded to more than 2,000 acres.  Richardson Grove State Park is the gateway to the magnificent redwood forests of Northern California, with the towering girth of these oldest living things on earth, their age estimated at 1,000 to 3,000 years, sheltering the roadway from both sides.

62.     Highway 101 threads through the Richardson Grove State Park, providing a transportation route for residents, visitors, tourists, commerce, and safety vehicles.

63.     Richardson Grove State Park is a "heritage park" with worldwide significance, serving as the gateway to the Redwood Region and the quintessential beauty of Northern California.  It provides millions of tourists with breathtaking views of gigantic redwoods.  The Richardson Grove has withstood the test of time for nearly 3,000 years, as its towering ancient redwoods shelter Highway 101, with a magnificent cathedral of trees and branches that interlace above the road.  The section of Highway 101 threading through Richardson Grove is eligible for scenic highway status on the California Scenic Highway System, and thus exists for both transportation and scenic purposes.  It is an unparalleled portion of California's Highway 101.

64.     Redwood root systems are shallow and inter-related, extending 3 to 10 times beyond the diameter of the individual tree.  Roots that have spent literally centuries successfully navigating their place under and through the soil must be protected to ensure water uptake, nutrient capacity, and structural stability.  The California State Department of Parks and Recreation (the "State Parks") instructs all Richardson Grove visitors that "all park features are protected by law and must not be disturbed." Commenting on the Proposed Project, the State Parks declared that "[a]ny project that affects the historic patina and the natural fabric of Richardson Grove State Park can have far reaching impacts to millions of people as they enter the Redwood Region."  In fact, even Caltrans admits "[i]t is not possible to know where roots may be encountered."

65.     The Richardson Grove is home and/or provides habitat for many wildlife species, including blue herons, osprey, acorn woodpeckers, belted kingfishers, the protected marbled murrelet, and the protected northern spotted owl, and provides critical and essential habitat for

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                          20

1   the Southern Oregon Northern California Coast Evolutionary Significant Unit of coho salmon

2   ("SONCC coho"), federally listed as threatened (May 6, 1997; 62 FR 24588), the Coastal

3   California Evolutionary Significant Unit of Chinook salmon ("CC Chinook"), federally listed as

4   threatened (September 16, 1999; 64 FR 50393), and the Northern California Evolutionary

5   Significant Unit of steelhead ("NC Steelhead"), federally listed as threatened (June 7, 2000;65

6   FR 36074).

7        66.    The area is also rich with cultural resources, including those of Native American

8   people, the first known inhabitants of the region, who hunted, fished, gathered food, and

9   collected native materials for basket weaving.  The South Fork of the Eel River threads through

10  the Richardson Grove and along Highway 101, and is designated as a Wild and Scenic River

11  under California law (1972) and the Federal Wild and Scenic Rivers Act (1981).  The South Fork

12  of the Eel River flows north 105 miles (169 km) from Laytonville to Weott, where it joins the

13  Eel River on the left bank. The South Fork's watershed of about 689 square miles (1,780 $km^2$)

14  drains a long and narrow portion of the Coast Range of California, covering parts of Mendocino

15  and Humboldt counties.  For much of its length, the Eel River parallels U.S. Route 101,

16  including through Richardson Grove State Park.

17       **B.    Destroying Our Redwoods**

18       67.    California State Parks are havens for California's unparalleled natural and cultural

19  resources.  As an economic engine for recreation and tourism, the State Parks also generate

20  billions of dollars a year in spending in local communities and support over 100,000 jobs

21  statewide.  Recently overcoming the worst financial crisis in decades, California cannot

22  withstand threats of any kind to such an immensely valuable source of jobs and revenue.  Yet,

23  these treasured parklands are facing an unprecedented barrage of assaults, not only from the lack

24  of funding, but from projects such as the one challenged herein, which would encroach upon

25  park land and devastate natural resources.

26       68.    Richardson Grove State Park is directly threatened by such assaults.  Caltrans

27  proposes to widen and realign Highway 101 through the Richardson Grove State Park, by

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                          21

1  removing trees and cutting and impacting the root systems of ancient redwoods along a one-mile

2  section of the highway.

3       69.    Caltrans is placing these ancient redwoods at risk with this Proposed Project,

4  particularly by cutting, compacting, and placing fill on the roots of these ancient trees,

5  endangering their very survival.  The Proposed Project contradicts Caltrans' own

6  acknowledgment of "the importance of redwoods."  The ancient redwoods in Richardson Grove

7  State Park are protected trees, for which State Parks declares that in "dense forests where drip

8  lines of trees touch each other it is impossible to install a new facility without causing damage."

9  State Parks advises that:

10         There should be no construction activities in the Structural Root Zone of a
       protected tree ... Any intrusion into this zone is usually accompanied by

11         significant injury to roots further from the trunk; this will shorten the useful life of
       the tree in the developed area by reducing vigor and introducing root disease.

12         Furthermore, damage to any structural roots may cause an already structurally
       compromised tree to become hazardous.

13

14       70.    Because of the renowned and iconic status of Richardson Grove, the Proposed

15  Project's influence extends well beyond its borders, exposing a state and national public treasure

16  to risk of harm.  Because the Proposed Project is intended to provide STAA trucks with new

17  access through the Grove solely for "goods movement," and because Richardson Grove is

18  treasured by visitors from throughout California and the nation, this Proposed Project has

19  impacts extending well beyond Humboldt County. The Proposed Project as designed would

20  result in a devastating legacy.

21       71.    Furthermore, the watershed of the South Fork of the Eel River, including its

22  tributaries, is designated critical habitat under the ESA for the SONCC coho.

23       72.    The watershed of the South Fork of the Eel River, including its tributaries, is also

24  designated as essential fish habitat ("EFH") for both coho and Chinook salmon under the MSA.

25       73.    Caltrans admits in the Final EA that threatened steelhead, threatened coho

26  salmon, and threatened Chinook salmon are "likely present in Durphy Creek," which flows into

27  the South Fork of the Eel River and thus is part of its watershed designated as EFH for coho and

28  Chinook salmon. The Final EA also admits "[t]hese species are also present in the South Fork of

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1   the Eel River." The Original EA/FONSI also acknowledged the area of the Proposed Project

2   includes suitable habitat for threatened steelhead, threatened coho salmon, and threatened

3   Chinook salmon.

4          74.     Durphy Creek, which Caltrans admits supports threatened steelhead, threatened

5   coho salmon, and threatened Chinook salmon, is within the area of the Proposed Project.

6   Caltrans plans to conducted significant soil disturbing activities in the immediate vicinity

7   thereof. All of the work that Caltrans proposes to do would be upslope from the South Fork of

8   the Eel River, including large amounts of cut slope work that would expose significant areas of

9   soil to erosion. The Proposed Project would also likely increase the amount of truck traffic

10  through the Grove, thereby increasing the risk of accidents and related toxic spills into the South

11  Fork of the Eel River and areas hydrologically connected thereto, as well as increasing

12  contamination of the South Fork of the Eel River and areas hydrologically connected thereto

13  related to truck exhaust, truck tire, and truck brake wear. Contaminants from such sources,

14  including, without limitation, copper and poly-aromatic hydrocarbons ("PAHs"), have

15  devastating effects on salmonids. The Proposed Project would also disturb large deposits of lead

16  contaminated soil, which would in turn erode into the South Fork of the Eel River and areas

17  hydrologically connected thereto. Thus, the Proposed Project would likely adversely affect these

18  salmonid species and their habitat.

19         **C.      The Grove is Threatened by Trucks**

20         75.     The Proposed Project would widen Highway 101 through Richardson Grove by

21  increasing the width of paved road in both directions and widening shoulders along the side of

22  the highway, to change curve radii along the one mile section.  The Proposed Project also would

23  include installation of a retaining wall and barrier rail outside of the Park on the north to allow

24  the road widening, excavating at least 20 feet down and placing a retaining wall closer to and

25  above the Eel Wild and Scenic River.

26         76.     To accomplish this road widening and realignment, Caltrans now claims it would

27  remove 38 trees and work within and impact the roots and root zones of <u>109 old-growth</u>

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                23

redwoods.  Since its initial approval, Caltrans has increased to 78 the number of old growth redwoods which would have project work occur within the structural root zone of those trees – the same area which State Parks advises should be avoided.  Many of these old-growth redwoods are as large as 18 feet in diameter, located immediately adjacent to Highway 101.  The following photos vividly depict how close the redwoods are to Highway 101 in the Grove and how dangerous the road widening Project would be to these trees:



GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

The Proposed Project would also entail ground disturbance, slope excavation, culvert work,

excavation and movement of lead-contaminated soils, potential temporary stream diversion,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                    25

1   night work with night lighting, disposal/barrow sites, equipment staging areas, permanent right-

2   of-way acquisitions from State Parks and private landowners, temporary construction easements,

3   and vegetation and tree removal.

4       77.    Beneficiaries of the Proposed Project include corporate giants whose trucks would

5   make expedited deliveries to Humboldt County. Caltrans' stated justification for widening

6   Highway 101 through the Grove is that the road must be wider to allow STAA trucks to pass one

7   another in opposite directions on this section of the highway.  So-called STAA trucks are truck-

8   and-trailer combinations that tend to be somewhat longer than the "California legal" truck-and-

9   trailer combination.

10       78.    Caltrans has specifically stated that the Proposed Project "**is not a safety**

11   **project**."

12       79.    Specifically, Caltrans maintains it is necessary to widen Highway 101 through

13   Richardson Grove and change the highway's alignment to prevent these STAA trucks from "off-

14   tracking."  "Off-tracking" refers to a phenomena in which a truck's rear tires may follow a

15   shorter path than the front tires when turning.

16       80.    However, some STAA trucks are currently allowed through the Richardson

17   Grove.  Caltrans cites no evidence in its Draft Environmental Assessment ("Draft EA") (defined

18   below), Original EA/FONSI, or Supplement to the Original EA/FONSI, indicating that these

19   STAA trucks are unable to safely pass in opposite directions.  Similarly, Caltrans cites no

20   evidence in its Draft EA, Original EA/FONSI, Supplement to the Original EA/FONSI, or 2017

21   FONSI indicating that in practice runs any STAA trucks are off-tracking when traveling through

22   the Richardson Grove.

23       81.    In its Draft EA, Caltrans cited information showing that over the most recent five-

24   year period only six accidents occurred involving trucks in the Proposed Project area, and two of

25   those were within one minute of each other. Moreover, only one of these accidents involved

26   trucks traveling opposite directions, and there is no evidence that these trucks were STAA trucks.

27       82.    Indeed, there is no evidence that any of these six accidents involved STAA trucks.

28   According to a California Highway Patrol report in existence at the time of the EA, there is no

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT          26

1  record of any collisions, citations, verbal warnings, or even complaints involving STAA trucks

2  traveling through the Richardson Grove.

3        83.    In response to the absence of such evidence, Caltrans created a computer model to

4  show how these non-existent accidents might possibly happen.  According to Caltrans, this

5  computer model purportedly demonstrated "where the deficiencies [in the current design of the

6  highway] were that would cause off-tracking."

7        84.    Given the lack of any evidence of off-tracking for STAA trucks in the Richardson

8  Grove, there is no reason to use a computer model to show that the current design "would" cause

9  off-tracking.

10       85.    Caltrans, however, did not provide any information clarifying this apparent

11  discrepancy.   In fact, Caltrans never disclosed to the public any information used to develop the

12  computer model—information which also formed the basis for the Proposed Project's design.

13  Caltrans never provided basic information, such as curve radii, length of curves, shoulder width,

14  existing geometrics, elevations, or the engineering used to develop the Proposed Project's

15  computer model.

16       86.    In doing so, Caltrans deprived the public of any meaningful opportunity to

17  evaluate and critique not only the very nature and impacts of the Proposed Project, but also

18  whether the Proposed Project as designed would accomplish what Caltrans sought to achieve.

19       87.    Caltrans' failure to identify the data used in its Proposed Project model also

20  deprived the public of an opportunity to investigate better alternatives to the Proposed Project.

21       88.    Because this Proposed Project intends to use State Parks land, Caltrans was

22  obligated to conduct a federal Department of Transportation Section 4(f) analysis.  Section 4(f)

23  bars the use of parklands for transportation projects absent exceptional circumstances which,

24  among other things, require Caltrans to demonstrate there are no prudent and feasible alternatives

25  to the Proposed Project and that all possible planning measures to minimize harm to Richardson

26  Grove State Park have been considered.  Caltrans failed to meet these obligations.

27       89.    Ultimately, Caltrans conceded the safety problems purportedly found by its

28  computer model "cannot be improved within the scope of the proposed project."   Caltrans also

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                          27

1   conceded that the Proposed Project failed to bring the stretch of Highway 101 through

2   Richardson Grove up to standards it purportedly identified as currently deficient, including:

3   minimum design speed and curve radii, shoulder width, minimum super-elevation rate, stopping

4   site distance, minimum distance to fixed objects, and corner sight distance.

5       90.     Not surprisingly, by the time Caltrans released the Original EA/FONSI, it

6   conceded the Proposed Project was not about safety at all: "The project is not a safety project,

7   but an operational improvement project to lift the STAA restriction at this location."  "Improved

8   safety is a secondary objective to this project."  Caltrans had to disclose that the primary purpose

9   of the Proposed Project was to allow STAA trucks to come barreling through the Grove: "The

10  primary purpose of the Project is to lift the restriction on STAA vehicles on the portion" of

11  Highway 101 that runs through Richardson Grove State Park.  Through its Supplement to the

12  Original EA/FONSI and Re-Validation of the Original EA/FONSI, and now the 2017 FONSI,

13  Caltrans reaffirmed this concession.

14          **D.      Caltrans Failed to Properly Provide for Public Review**

15      91.     In early 2007 Caltrans initiated a "Richardson Grove Goods Movement

16  Feasibility Study" (the "2007 Study"), which was intended to design a cooperative realignment

17  plan to improve the movement of goods in and out of Humboldt County.  The purpose of the

18  2007 Study was to develop and consider alternative ways of providing safe and economically

19  feasible goods movement, including increased access by STAA trucks.  STAA truck access is

20  currently allowed by statute for livestock trucks and moving vans on Highway 101 through

21  Richardson Grove State Park, but is otherwise prohibited.

22      92.     Caltrans abandoned development of the 2007 Study in favor of computer

23  modeling for STAA access through the Richardson Grove.  The computer software developed

24  conceptual designs using truck turning templates specific to the STAA truck type.

25      93.     On July 26, 2007, Caltrans issued a press release announcing that the movement

26  of goods through Richardson Grove would be "dramatically improved" under a realignment plan

27  developed by Caltrans.  Caltrans apparently consulted regional government representatives from

28  Humboldt, Del Norte, and Mendocino counties, as well as State and federal legislators, in the

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                    28

development of this realignment plan, but did not disclose or provide an opportunity for public review and input on the proposed road realignment.

94.     Caltrans then held two "open house" public meetings on <u>September 26, 2007</u> and <u>February 20, 2008</u>, at which Caltrans made no formal presentation, but rather displayed maps and exhibits for review and took questions.  Caltrans conducted a scoping meeting on <u>May 14, 2008</u>, and again made no formal presentations but took questions and comments.  Caltrans received a flood of scoping comments, urging it to consider reasonable and feasible alternatives to any widening that could impact the ancient redwoods and the fish and wildlife habitat, and to ensure that the full scope of STAA access projects in Humboldt, Mendocino, and Del Norte counties be fully evaluated as related projects with cumulative and growth-inducing effects.

95.     Even though Caltrans characterized its decision reported in the Federal Register on <u>February 26, 2014</u> as a "reevaluation" of the Original EA/FONSI, and despite the Court's explicit instructions in the *Bair I Order* that Caltrans broadly re-examine the Proposed Project in a Revised EA, Caltrans refused to respond to, or ever consider, comments submitted in response to the Supplement to the Original EA/FONSI that addressed shortcomings in the Original EA/FONSI.  These comments were left unaddressed in the Supplement to the Original EA/FONSI.

96.     Now, in 2017, Caltrans furthers its disregard for the *Bair I* requirements and federal law, particularly by attempting to revive previously rescinded documents and cobble them together as a so-called "Revised EA," concerning which, notwithstanding changes made to both the Proposed Project and Caltrans' analysis of it, as well as the changed circumstances that have occurred over the last decade since the project was first conceived, Caltrans did not provide any opportunity for public comment.

**E.     Caltrans' Draft EA Was Deficient**

97.     In early <u>December 2008</u>, Caltrans issued its Draft Environmental Impact Report/Environmental Assessment and Programmatic Section 4(f) evaluation (the "Draft EA"). The public comment period was scheduled to close on <u>January 29, 2009</u>, but because Caltrans had failed to notice the preparation of the Draft EA to the California State Clearinghouse, public

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                   29

1   comments were accepted until <u>March 12, 2009</u>.  Caltrans conducted a public hearing on the Draft

2   EA on <u>December 15, 2008</u>.  Caltrans received more than 800 comments in opposition to the

3   Proposed Project and its Draft EA.

4        98.    Caltrans' Draft EA was dramatically deficient.  In particular, the Draft EA lacked

5   data and information necessary to evaluate the impact of the Proposed Project to State Park

6   resources, its significant and cumulative effects particularly in relation to its purpose and need,

7   the existence of feasible alternatives to the Proposed Project, and the viability of the proposed

8   mitigation measures.  The Proposed Project description lacked the most basic information

9   necessary to review the Proposed Project, including not only the engineering, curve, and design

10   criteria used to create the Proposed Project, but also any identification of the State Park land to

11   be acquired.  The Proposed Project plans were largely unreadable and failed to present the most

12   basic details concerning cut and fill, easements, and the proposed retaining wall.  Caltrans did

13   not provide diagrams depicting root structure zones of the redwoods, maps of independently

14   proposed bicycle routes, or the location of right-of-ways to be acquired or relinquished by State

15   Parks. In this way, Caltrans failed to provide the required Proposed Project description to enable

16   the public to understand and critique how the proposed changes to Highway 101 might affect

17   Richardson Grove.

18        99.    The statement of project purpose and need in the Draft EA failed to provide a

19   clear and consistent statement of the objectives that the Proposed Project was intended to

20   achieve.  For example, although Caltrans initially informed the public that the purpose of the

21   Proposed Project was to enhance safety, it changed tack during the environmental review

22   process, and ultimately admitted that the Proposed Project is not a safety project.  Moreover,

23   even though Caltrans stated in the Draft EA that the Proposed Project would enhance goods

24   movement by opening Richardson Grove to STAA trucks, it simultaneously concluded that the

25   economic impacts of the Proposed Project on Humboldt County businesses and trucking firms

26   would be negligible.  The Draft EA thus cast doubt on whether the Proposed Project would

27   accomplish any of Caltrans' stated purposes.  The statement of project purpose and need in the

28   Draft EA was not well-established, not well-defined, and not well-justified.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                   30

100.     The Proposed Project purpose and need as ultimately defined in the Draft EA – opening Richardson Grove to large trucks – was so narrowly stated as to preclude meaningful analysis of a range of reasonable alternatives: by narrowly framing the purpose and need in this way—as opposed to, for example, framing it as enhancing the movement of goods in the area—Caltrans effectively predetermined its analysis of alternatives. A properly framed statement of purpose and need would have allowed decision makers and the public to consider the preliminary and foundational question: does the public need large trucks to go through Richardson Grove or is there another way to efficiently get toilet paper and washing machines to stores that does not put at risk 3000 year-old trees?

101.     However, even as to this narrowly defined purpose and need, the Draft EA failed to consider and evaluate feasible alternatives to the Proposed Project that would achieve it, and yet not expose public resources to environmental risk. These include slowing traffic speed through the Grove, providing alternative transportation measures, or hiring a CHP officer to escort the through the Grove the small number of STAA trucks that Caltrans claims do not currently qualify for exemptions to the STAA restriction but would travel through the Grove if they could.  Caltrans did not document an examination of all prudent and feasible alternatives and all possible planning measures to minimize harm to Richardson Grove.

102.     As the comments on the Draft EA also repeatedly pointed out, Caltrans failed to identify and adequately evaluate the Proposed Project's significant environmental impacts, including: effects on the ancient redwood trees adjacent to the highway throughout the Proposed Project site; effects on protected fish and wildlife species and other biological resources, not only from tree damage and removal but also from increased noise and light during and after construction and from release and disposal of toxic materials; greenhouse gas emissions; and the cumulative and growth-inducing effects associated with expanding STAA truck access and goods movement throughout Humboldt, Mendocino, and Del Norte counties.

103.     The Draft EA failed to provide, for example, documentation and analysis about how the Proposed Project would increase or decrease the cumulative amount of hardened surface on the critical structural root zones of the redwoods, which for many trees extend several feet on

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                          31

1  either side of the road.  The Draft EA failed to evaluate the effects of constructing the Proposed

2  Project and altering the road's drainage pattern on water transport and availability to the old-

3  growth redwoods.  In fact, the Draft EA merely listed 41 trees as having "potential tree root

4  effects," yet failed to provide an assessment of the number of these trees that would have their

5  structural root zone compromised through placement of impervious surface, fill, and/or cutting of

6  their roots.

7        104.    Roots are the life lines of the redwood tree.  Any disturbance of the roots can

8  threaten a tree's health and longevity.  Redwoods breathe through their roots, requiring soil that

9  is loose enough to allow ample air flow and nutrients underground.  Roots act as a conveyance

10  and storage system for water and nutrients.  Roots also serve as the structural system for entire

11  groves of redwoods.  Redwoods lack a deep tap root, and instead rely on a dense and far-

12  reaching network of shallow, interconnected roots for mutual stability, forming symbiotic root

13  systems among groves.  Soil compaction and fill disrupt the respiration process, effectively

14  cutting off air to these trees.  The Proposed Project would sever redwood roots, and soil

15  compaction would be unavoidable as the combined effects of construction, roadbed material, and

16  an increase in paved surfaces adjacent to the road threaten to devastate these trees.  The proposed

17  root cutting may significantly impact the nutrient and water acquisition of the trees, reduce their

18  stability, and inhibit asexual reproduction through stump sprouting.  Even Caltrans

19  acknowledges that "[i]t is not possible to know where roots may be encountered."

20        105.    The Draft EA failed to properly disclose and analyze construction impacts on

21  tourism and park visitors, particularly in terms of increased noise and light associated with

22  nighttime work and the summer construction phases.  The Draft EA did not evaluate whether the

23  road widening would result in a degraded park experience for future park visitors, given the

24  removal of understory vegetation, increased exposure to the highway in areas of tree removal,

25  and increased noise and light impacts as a result of these changes.  In many respects, the Draft

26  EA made sweeping, conclusory statements that the Proposed Project's environmental effects

27  would not be significant, without providing any criteria or meaningful explanation why, for

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                   32

1    example, the Proposed Project would not diminish State Park values and resources for those

2    millions of travelers who pass through the Grove.

3          106.    While the Proposed Project supposedly would advance the economic interests of a

4    small group of businesses, including large non-local companies, the Draft EA failed to identify

5    and evaluate the related impacts associated with this purpose, including any negative economic

6    impacts to tourism, the cumulative effects associated with other STAA access projects Caltrans

7    is undertaking in northern Humboldt and adjacent counties, and any growth-inducing impacts.

8          107.    The Draft EA failed to provide adequate mitigation measures for most of these

9    and other impacts.  The limited planning and mitigation measures that were identified were

10   improperly deferred, ineffective, unenforceable, and vague.  For example, Caltrans failed to

11   provide technical reports or other documentation to demonstrate that the ancient redwoods,

12   biological resources, and other State Park resources would be fully and adequately protected

13   from impact.  Caltrans also failed to conduct any field studies or surveys for the federally

14   protected marbled murrelet and the northern spotted owl, despite recognition that the Proposed

15   Project "may affect, and is likely to adversely affect" these species.  Caltrans admits construction

16   night lighting "could affect Northern spotted owls."  Instead, Caltrans deferred collection of data

17   essential to analysis of these effects until ***after*** implementation of the Proposed Project.

18         108.    The Draft EA thus indicated that the Proposed Project may have a significant

19   effect on the environment.  At the very least, the Draft EA's inconsistencies and other failures

20   raised a substantial question as to whether the Proposed Project may have a significant effect on

21   the environment.

22         **F.**     **The Original EA/FONSI Failed to Remedy the Draft EA's Deficiencies**

23         109.    After the close of public comment, Caltrans developed additional data about the

24   Proposed Project, including facts and information, changes, and evaluation that had not been

25   provided in the EA.  On May 18, 2010, more than a year after the close of public comment on

26   the Draft EA, Caltrans released the Proposed Project's Final Environmental Impact

27   Report/Environmental Assessment and Programmatic Section 4(f) Evaluation ("Original

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                           33

1    EA/FONSI").  On the same date, Caltrans approved the Proposed Project with no further

2    opportunity for public review or input.

3        110.    Despite information in the Draft EA indicating that the Proposed Project may

4    have a significant effect on the environment, or at the very least raising a substantial question as

5    to whether the Proposed Project may have a significant effect on the environment, Caltrans failed

6    to prepare an Environmental Impact Statement for the Proposed Project as NEPA requires.

7    Instead, Caltrans adopted the Original EA/FONSI.

8        111.    The Original EA/FONSI fails to remedy the Draft EA's dramatic deficiencies.

9    Rather than do as hundreds of comments had requested and provide the public with an

10   opportunity to review a revised environmental analysis that corrected the Draft EA's extensive

11   informational and analytical errors and omissions, Caltrans simply certified the Original

12   EA/FONSI and immediately approved the Proposed Project. The public had no opportunity to

13   review and comment on the Original EA/FONSI and the new information and analysis Caltrans

14   included therein.  In this way, Caltrans' process deprived the public of its opportunity to review

15   the Proposed Project's purpose and need, its significant environmental effects, proposed

16   alternatives and mitigation measures, and the information relied upon by Caltrans to approve the

17   Proposed Project.

18       112.    Notably, the Original EA/FONSI does not remedy many of the informational and

19   analytical deficiencies found in the Draft EA, including its failure to provide: a legally sufficient

20   statement of purpose and need for the Proposed Project, an adequate project description and

21   project plans, an evaluation of significant environmental effects, a sufficient cumulative impact

22   analysis and evaluation of growth inducing impacts, technical studies and documentation to

23   support conclusions that impacts would be less than significant, an adequate analysis of feasible

24   and prudent alternatives, or identification of enforceable and effective mitigation measures.

25       113.    Caltrans also significantly changed the Proposed Project in the Original

26   EA/FONSI from what was described in the Draft EA and made available for public review.

27   After close of public comment, and with no opportunity for review by the public or other

28   agencies, Caltrans added <u>an additional 46 trees</u> to the original 41 trees identified in the Draft EA

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                      34

as having potential root impacts.  Most of these trees are large redwoods: 73 are 30 inches or greater in diameter (the standard Caltrans uses to define "old-growth"), and 40 are between 7 and 18 feet in diameter.  According to the Original EA/FONSI, "[c]onstruction activities in close proximity to these trees could result in impacts to the root systems. There would be both cut and fill activities occurring within the structural root zone.  The maximum depth of excavation would be approximately two feet and the maximum fill depth would be approximately three and a half feet." Original EA/FONSI at 40-41.  The Original EA/FONSI identifies 68 of the 87 total trees that would have cut and fill activities within their root zone, but does not provide any technical study or documentation assessing how these trees would have their structural root zone compromised through placement of impervious surface, fill, or cutting of their roots.  Caltrans acknowledges in the Original EA/FONSI that "it may not be possible to avoid cutting roots greater than two inches."  Caltrans also admits that it did not conduct any field studies of the redwoods' structural root systems affected by this Proposed Project, and does not know where roots may be encountered.  Thus, Caltrans by its own admission does not know what the ultimate effects of the Proposed Project will be on the redwoods or their root systems.

114.    Caltrans proposes to protect these trees by using an air spade to dig up roots, adding brow logs to minimize the impact of fill on the trunks of the trees, and watering the trees weekly once excavation below the finish grade occurs.  Caltrans also proposes increasing the removal of invasive plants as a mitigation measure to offset impacts to these mature redwoods where construction occurs within their structural root zone.  However, the Original EA/FONSI fails to provide any documentation to establish how these measures or other measures would be effective and sufficient to protect these trees from harm, or to supply sufficient support, water, and nutrients to meet their demands.  The Original EA/FONSI fails to provide adequate detail to assess the Proposed Project's impacts on the redwoods and their root systems.  Nor did Caltrans provide at the time of approval a mitigation monitoring plan to establish that the mitigation measures it did identify would be implemented and properly reported.  The Original EA/FONSI never adequately addresses widespread concern that the Proposed Project would eventually cause tree mortality along the highway and within the Grove.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                          35

115.    Caltrans also significantly altered the scope of the Proposed Project after issuance of the Draft EA by relocating the retaining wall from one side of Highway 101 to the other, and placing it downslope to provide for the widening and placement of the road in the northern section of the Proposed Project.  Because of this change, Caltrans was obligated to, but did not, submit this change to the federal-river administering agency, the National Park Service, for Section 7 consultation under the Wild and Scenic River Act.  The Original EA/FONSI failed to provide any information or analysis about the significant environmental effects related to this relocation, particularly in terms of geology, soils, plants, trees, and other biological and natural resources, and impacts on the Wild and Scenic Eel River.  These changes to the Proposed Project were made without any opportunity for the public or other agencies to review and comment upon them.

116.    Caltrans also revised its plans for the Proposed Project after issuance of the Draft EA to include deeper excavation in areas with lead-contaminated soils.  Yet the Original EA/FONSI failed to disclose or analyze whether removal and disposal of these soils—which Caltrans proposes to stockpile in a roadside area that ultimately drains to the South Fork of the Eel River—would comply with hazardous materials handling laws or pose any risk of significant impacts to water quality, aquatic species, or public health.

117.    Other changes in the Original EA/FONSI included: new but still fundamentally contradictory information concerning whether the Proposed Project would fulfill its purpose and need and whether the Proposed Project would induce significant growth or development elsewhere in Humboldt County; new but still internally inconsistent and contradictory information about the increase in impervious area resulting from the Proposed Project; a new mitigation measure—removal of a restroom in the State Park—the impacts and effectiveness of which were not properly disclosed or analyzed; changes in the proposed method of culvert replacement (from a cast-in-place resin liner to full culvert replacement), without any discussion or analysis of the potential environmental impacts of these changes; new but impermissibly deferred mitigation measures for impacts to water quality; new information concerning the United States Fish and Wildlife Service's "Biological Opinion" finding that the Proposed Project

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1    would "adversely affect" and result in "harassment" of federally protected species, without any

2    revision to the Original EA/FONSI's conclusion that the Proposed Project would have no

3    significant effects on listed wildlife; new, internally inconsistent, and contradictory information

4    about impacts associated with night-time construction; and a new but still fundamentally

5    deficient discussion of the cumulative impacts of the Proposed Project in relation to other past,

6    present, and reasonably foreseeable future projects affecting old-growth redwood forests.

7         118.    The Original EA/FONSI included responses to comments, which were deficient

8    in their failure to identify and respond to all comments and concerns raised, as required by

9    NEPA.  The numerous changes to the Original EA/FONSI failed to provide the public with

10   sufficient information to permit members of the public to weigh in on the Proposed Project and

11   inform decision-makers of their concerns.

12        119.    The Original EA/FONSI, now purportedly "revised" by Caltrans through several

13   other subsequent and contradictory documents  fails to put forth a convincing statement that the

14   Proposed Project is not likely to have a significant impact on the environment.  At the very least,

15   the Original EA/FONSI, in combination with Caltrans' response to public comments and other

16   information in the record, indicate that Caltrans failed to take a the required hard look at the

17   Proposed Project's potential impact on the environment.  In fact, the obvious severity of the

18   Proposed Project's impact is enough to require that Caltrans have prepared an EIS.

19        120.    Caltrans issued its Finding of No Significant Impact and decision on May 18,

20   2010, and filed a notice of decision with the California State Clearinghouse pursuant to

21   California state law on May 19, 2010.

22        **G.    Caltrans Has Failed to Correct Its Errors Identified by the *Bair* Court or**
         **Otherwise Address the Shortcomings in the Original EA/FONSI**

23

24        121.    Several of Plaintiffs in this case successfully challenged Caltrans' May 18, 2010

25   approvals in *Bair v. California State Department of Transportation,* U.S. District Court for the

26   Northern District of California., No. C 10-04360 ("*Bair I*").  The Court in *Bair* granted summary

27   judgment to the Plaintiffs in its Order on Cross-Motions for Summary Judgment, Motion to

28   Strike, and Motion for Sanctions (the "*Bair I Order*"), due to the serious questions about whether

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                      37

Caltrans truly took "a 'hard look' at the effects of the project" and made "an informed decision," as required by NEPA.  *Bair I Order* at 8, 9.  The Court ordered that

> "a revised EA that corrects the data inaccuracies identified [in the *Bair I Order*] and assesses the impacts of the project through the lens of a correct analysis is necessary, even if this reevaluation ultimately reveals that the EA/FONSI remains valid. Alternatively, Caltrans may proceed directly to conducting an EIS."

*Id.* at 10.

122.    The Court ordered Caltrans to "prepare accurate maps, and a qualified engineer shall sign and date the revised maps (unlike the unsigned maps in the existing record).  The agency's analysis shall number each ancient redwood, clearly identify it in the map, identify its root zone, and set forth the environmental issues to each one.  The written analysis and the maps should be readable together without doubt as to which tree is which."  *Id.* at 10-11.

123.    The Court instructed that "Caltrans should give serious consideration to the other significant arguments made by plaintiffs in their motion."  *Id.* at 10.

124.    On September 18, 2013, Caltrans approved a "Supplement to the Final Environmental Assessment" (the "Supplement to the Original EA/FONSI" or "Supplement"), representing it as "in compliance with the April 4, 2012 *Bair I Order* to prepare updated old-growth redwood tree maps and analysis."  The Supplement to the Original EA/FONSI purports to "revise[] a portion of Chapter 2 of the original document presenting results of subsequent surveys for marble murrelets and analyzing potential tree impacts based on revised tree data and new proposed barrier rail modifications."  Supplement at 1.

125.    The Supplement provides that, except for changes in Chapter 2 and a minor change in Chapter 1 to address modifications to the barrier rails needed to satisfy new federal standards, "all other information and chapters in the original Final EA remain accurate." Supplement at 1.

126.    The Supplement to the Original EA/FONSI included three Attachments:  A) maps intending to identify old-growth redwoods in the Proposed Project; B) an intended "Individual Tree Analysis"; and C) a Table intending to cross-reference trees mapped in Attachment A with tree numbers presented in the May 2010 Final EA.  In addition, Caltrans published a "Final

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                          38

1   Report and Evaluation of Potential Effects on Old-Growth Redwoods from Implementation of

2   the Richardson Grove Operational Improvement Project," dated September 16, 2013 (the "Tree

3   Report").

4        127.    On September 21, 2013, Caltrans released its Supplement for a 30-day public

5   comment period. The public comment period closed on October 21, 2013.  Plaintiffs submitted

6   extensive comments, identifying many of the same issues and concerns which remain

7   inadequately or not addressed from the Original EA/FONSI.

8        128.    The Supplement did not remedy the deficiencies of the Original EA/FONSI and

9   did not comply with the *Bair I Order* in several respects.  Caltrans failed to provide a valid

10  NEPA document.  A "supplement to an environmental assessment" is not a type of NEPA

11  document.  40 C.F.R. § 1508.20.  The *Bair* Court, in evaluating Caltrans' failure to prepare an

12  EIS, determined that "there are a number of discrepancies and omissions that raise serious

13  questions about whether Caltrans truly took a 'hard look' at the effects of the project and made

14  an informed decision."  *Bair I Order*, at 8.  The *Bair I Order* set forth specific errors, and stated

15  that a "revised EA ... is necessary" to correct the data inaccuracies, and that "[a]lternatively,

16  Caltrans may proceed directly to conducting an EIS."  *Bair I Order*, at 10.  By issuing only the

17  Supplement, Caltrans did neither - it failed to prepare and issue a "revised" EA and failed to

18  prepare an EIS.

19       129.    The Supplement, moreover, fails take a "hard look" at the Project's environmental

20  impacts and demonstrate that the impacts to the old-growth redwoods would not be significant.

21  The Supplement fails to correct the data inaccuracies and omissions about impacts of the

22  Proposed Project on the old-growth redwoods.  The Supplement fails to provide any metric for

23  measuring the effect of root zone disturbance or damage to foliage, relying on the subjective

24  conclusions of an arborist, unconnected to any concrete root disturbance criteria.  The individual

25  tree analysis presents a summary of conclusions, lacking adequate explanation for how those

26  conclusions were reached for any given tree.  In addition, the Supplement greatly expands an

27  exception from the handwork restrictions identified in the Original EA/FONSI, allowing the use

28  of mechanized equipment in root zones not only for culvert work, but also for soldier pile,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT          39

1    gabion and barrier wall installation, and cutting back roadside slopes.  Further exacerbating the

2    Original EA/FONSI's inconsistency as to whether and where roots greater than two inches in

3    diameter would be cut, the Supplement lists additional "areas of proposed cuts (culvert work,

4    wall work and cutting back roadside slopes)" in which the large roots may be cut.

5         130.    The Supplement creates more inaccuracies and confusion by failing to discuss the

6    ten percent root loss threshold for old, low-vigor trees identified in the State Parks Natural

7    Resources Handbook, recommended by Caltrans' own arborist, and relied upon extensively in

8    the *re-validated* Original EA/FONSI.  The Supplement assumes that all redwoods are resilient

9    enough to withstand significant root damage, which represents a change in rationale from and

10   further inconsistency with the *re-validated* Original EA/FONSI's reliance on the State Parks

11   Natural Resources handbook.

12        131.    The Supplement's "individual tree analysis" in Attachment B omits information

13   critical to an evaluation of the Proposed Project's impacts, including information about the

14   location or depth of planned excavation in each tree's root zones.  The Final EA's Table 10 is not

15   mentioned or considered.  Cut areas are not depicted on the maps.  The Supplement is misleading

16   because it only discloses placement of materials, and not the excavation of materials.  Nor do the

17   maps calculate the percentage of each tree's root zone that would be covered by impervious

18   surface, instead relying on an average impervious area increase across all root zones.  The tree

19   alanysis does not even identify the Supplement as reviewed material, and fails to evaluate the

20   expanded potential for damage from mechanized equipment.

21        132.    The Supplement also fails in remedying the other extensive errors which the *Bair*

22   Plaintiffs had argued and which the *Bair I Order* instructed Caltrans to give "serious

23   consideration" in a "revised EA" or "EIS."  These are discussed herein, and include, without

24   limitation, the failure to justify the purpose and need for the Proposed Project; failure to address

25   potential impacts and hazards related to excavation of lead-contaminated soils, particularly with

26   respect to air spade excavation; significant gaps in the manner in which Caltrans's attempted to

27   assess toxicity levels in soils; failure to evaluate the impact on the northern spotted owl,

28   particularly because of the increase presence of barred owls in or adjacent to Project areas;

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                40

1  failure to correctly assess impacts to the Eel River watershed and the listed salmonid species that

2  inhabit it, including without limitation in relation to cumulative impacts from increased

3  marijuana production; failure to correctly address impacts to State Park resources and visitor

4  experiences, particularly given the service reductions and budget cuts throughout the State Park

5  system since 2010; failure to provide adequate assessment of the Proposed Project impacts to

6  public safety; failure to address the cumulative impacts of the related STAA projects, and the

7  significance of the overall project for STAA access in Northern California; failure to provide

8  valid economic analysis related to the Proposed Project impacts; failure to establish the

9  effectiveness of mitigation measures, and relying on mitigation that is no longer valid; and

10  failure to evaluate impacts to the human environment, particularly health and safety associated

11  with increased use of STAA trucks.

12       133.   On January 23, 2014, Caltrans issued "Responses to Comments on the

13  Supplement to the Final Environmental Assessment" (the "Supplement Responses").  Caltrans

14  limited its Supplement Responses to comments pertaining to information in the Supplement or

15  that brought forward new information.  Contrary to the express direction in the *Bair I Order*,

16  Caltrans refused to and did not respond to comments concerning many issues, including "other

17  significant arguments" Plaintiffs had made in in *Bair I*.  Thus Caltrans did not and refused to

18  respond to comments concerning a number of issues, including the purpose and need for the

19  Proposed Project, the need for an EIS, potential impacts on the visitor experience at Richardson

20  Grove State Park, bicycle access, construction impacts of noise, nuisance odors and traffic

21  congestion, alternatives, potential impacts to threatened coho salmon, threatened Chinook

22  Salmon, and threatened steelhead, cumulative impacts, adverse effects on emergency services,

23  and financial and economic impacts.

24       134.   On February 26, 2014, Caltrans caused a notice to be published in the Federal

25  Register, announcing Caltrans had taken "actions ... by issuing licenses, permits and approvals"

26  for the Richardson Grove Operational Improvement Project, as described in the Final

27  Environmental Assessment Finding of No Significant Impact ("FONSI") for the Proposed

28  Project, approved on May 18, 2010; the Supplement to the Original EA/FONSI, approved on

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                           41

1  January 24, 2014; and other documents in the FHWA project records. *Federal Register*/Vol. 79,

2  No. 38/Wednesday, February 26, 2014/Notices, [10870]. On January 24, 2014, Caltrans executed

3  a "NEPA/CEQA Re-Validation Form," finding the original EA was in need of updating, and

4  that, with the Supplement to the Original EA/FONSI, the Original EA/FONSI "remains valid."

5       135.    Caltrans subsequently withdrew and rescinded its May 18, 2010 Project approval

6  and Original EA/FONSI, as well the 2014 "NEPA/CEQA Re-validation Form." *Federal*

7  *Register*/Vol. 79, No. 228/Wednesday, November 26, 2014/Notices, [70612].

8      **H.**    **Caltrans' 2017 Approvals  Fail To Comply With NEPA Or Correct Errors**

9          **Identified By The *Bair I* Court Or Otherwise Address The Shortcomings In**
        **The 2010 EA/FONSI**

10       136.    Caltrans subsequently commenced upon an secretive several-year process,

11  without allowing any public review and comment, which resulted in issuance of a May 1, 2017

12  Finding of No Significant Impact ("2017 FONSI") and a May 22, 2017 second approval of the

13  Richardson Grove Project. The 2017 FONSI, which Caltrans characterizes as part or its

14  purported "Revised EA," fails to attend to the deficiencies which have been identified since

15  2008, including errors as identified by the court in *Bair I*.

16       137.    Under Caltrans' procedures, a Project Report documents Caltrans' approval of a

17  highway project, and a project receives its approval when the Project Report is approved.

18  Caltrans approved the 2017 Project Report on May 22, 2017.  The 2017 Project Report provides

19  an overall cost estimate of more than **20 million dollars**, for a project which Caltrans has

20  repeatedly characterized as making only "minor adjustments" to a one-mile segment of Highway

21  101.

22       138.    The Project Report purports to summarize changes made to the Proposed Project,

23  since issuance of the 2010 Original EA/FONSI.  The changes mentioned are: (1) extending three

24  culverts rather than replacing them; (2) reducing the depth of roadway structural section from

25  previous 18" to 12"; and (3) changes to the Retaining Wall at the north end of the Project.

26       139.    The Project Report's stated purpose is to "update and reapprove the 2010 Project

27  Report," which it included as Attachment A, but without any of the attachments originally part of

28  the 2010 Project Report on which the 2010 Original EA/FONSI extensively relied.  It also

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT          42

1   includes new Attachments B-M, of which Attachments B-D are undated and unsigned. The latter

2   unsigned documents are plan layouts, typical cross-section diagrams, and a retaining wall general

3   plan.

4        140.   The new Attachment E is titled the "2017 Environmental Documentation" for the

5   Richardson Grove Project.  It provides two documents which were both approved on May 1,

6   2017: an Addendum to the 2010 FEIR ("2017 Addendum"), and a separate 2017 FONSI, which

7   purports to identify revisions to the 2010 FONSI, Original EA/FONSI and the 2013 Supplement

8   to the Original EA/FONSI.  According to the 2017 FONSI, the 2010 Original EA/FONSI, its

9   2013 Supplement, and the revisions and updates presented in the 2017 FONSI, together

10   constitute the "Revised EA" required by *Bair I*.  In approving the 2017 FONSI, Caltrans relied

11   on the 2010 Original EA/FONSI and its 2013 "Supplement"; but Caltrans did not re-adopt those

12   documents. And neither the Project Report nor the 2017 FONSI includes or incorporates the

13   2010 Original EA/FONSI and its 2013 "Supplement" as part of the Proposed Project's

14   "Environmental Documentation."

15        141.   The 2017 FONSI summarizes Caltrans' revised impacts analyses for old growth

16   redwoods, and purportedly revises portions of the 2010 Original EA/FONSI and the 2013

17   "Supplement," with changes to the project description and additional information and analyses.

18   The 2017 FONSI identifies changes to the 2010 Original EA/FONSI, including reducing (1) the

19   number of trees to be removed; (2) the total amount of disturbed soil; (3) the amount of new

20   impervious surface; (4) the volume of excavated material. It does not provide or reference

21   supporting calculations or analyses to document any of these changes.  Caltrans does not make

22   clear what is intended to support the decision for these changes, and whether these changes make

23   any real difference in terms of significant environmental impacts.  Elsewhere in the multiple

24   documents that Caltrans' appears to rely on for its approval —the legal status of which under

25   NEPA is questionable at best—there is inconsistent evidence identifying a greater volume of

26   excavated material and different culvert work than claimed in the 2017 FONSI.

27        142.   The 2017 FONSI also identifies a change and ***increase*** from 2010 of the number

28   of old growth redwood trees for which Caltrans claims work will be done within their structural

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                    43

root zones.  According to the 2017 FONSI 109 old growth redwood trees would have project work within their root health zones.  Of these, 78 would have ground disturbing work within their structural root zones, and 72 of these are located within Richardson Grove State Park.

143.    The 2017 FONSI lists as an update to References and substantially relies upon to conclude that the Proposed Project will have no significant impact on these and other trees in the Proposed Project—but does not incorporate or attach—a study dated August 14, 2015, entitled Final Report An Evaluation of Potential Effects on Old-Growth Redwoods from Implementation of the Richardson Grove Operational Improvement Project, by Dennis Yniguez of Tree Decisions ("2015 Tree Report"), which, in turn, relies on project maps intended to depict old growth redwoods in the Proposed Project, dated August 13, 2015, and *Individual Tree Details*, dated August 12, 2015, both prepared by Caltrans.  The 2015 Tree Report simply concludes there will be no significant environmental effect on these trees.  The *Individual Tree Details* document does not identify any avoidance or mitigation measures for work in and around the root zones of the old growth redwoods.

144.    The 2015 Tree Report's conclusion is not based on an adequate disclosure and evaluation of the impacts of the Proposed Project on the old growth redwoods. While it purports to relies on a "rating" system of construction impact of 1 to 6 to conclude no impact, this rating system —which was created by its author, based apparently on his professional judgment (which he admits is not based on redwood expertise), and lacks any accepted professional or scientific basis—lacks quantification of the effects of root zone disturbance on tree health and fails to provide a metric for measuring impacts, making it impossible for the public to evaluate whether the ratings are valid.

145.    Furthermore, the 2015 Tree Report does not provide any explanation of the relationship between the quantitative ratings that it assigns impacts and the qualitative conclusions that the report presents. And those qualitative conclusions are, in many cases, completely unjustified, unjustifiable, and internally contradictory amounting to a conclusion of no significant impact "because we way it is," transparently aimed at achieving that result. For example, the Proposed Project calls for moving the roadway up to seven feet towards an old-

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                        44

growth redwood tree assigned the number 102 in the report, which has diameter at breast height ("dbh") of 103 inches, impacting 33.2% of the structural root zone of the tree. By any measure, this qualifies as a significant impact—and, in fact, severe impact—to this ancient tree. However, the qualitative analysis assigned to the Proposed Project's impacts to this tree is merely "short-term visible reduction in foliage density." This is the exact same analysis assigned an old-growth redwood tree of the same approximate dbh and assigned the number 37, which would have one sixth of the impact in its structural root zone. A further example is the old-growth redwood tree assigned the number 42 in the report, 26.8% of the structural root zone of which would be impacted by the Proposed Project. Without explanation, the report describes the impact on this tree as "slight."

146.    Given the report's failure to use any commonly accepted metric to assess impacts or to explain the basis for its *sui generis* system of analysis, these results can only be understood as the result of carelessness, inexperience, and/or a drive to achieve a certain result: to whit a finding of no significant impact. The fact that the author of the report, Dennis Yniguez has explicitly stated explicitly that he is "not a redwood expert" makes his "just trust me" approach to the analysis of the Proposed Project's impacts on irreplaceable 3000 year old trees all the more unacceptable.

147.    Other shortcomings of the 2015 Tree Report include as follows.

148.    Its failure to account for the fact that the Proposed Project would impact the largest trees in the Grove, which play a dominant role in the ecology of the Grove as well as visitor experience.

149.    Its failure to account for the impact of previous highway construction on the trees that would be impacted by the Proposed Project.

150.    Its application of an arbitrary formula for determining the extent of a trees root health zone—five times dbh—rather than the commonly accepted approach which uses a tree's drip line to make the determination, which allows the report to underestimate the impact of the Propose Project on particular trees.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                    45

151.    Its inconsistency with, failure to comply with, or address the California State Park Handbook's guidance concerning work in the structural root zones of redwood trees, to whit: "There should be no construction activities in the Structural Root Zone of a protected tree.  This includes soil disturbance from 0 to 3 foot depth including trenching, grade changes, storage of vehicles and materials, or compaction caused by machinery traversing the zone.  Any intrusion into this zone is usually accompanied by significant injury to roots further from the trunk; this will shorten the useful life of the tree in the developed area by reducing vigor and introducing root disease.  Furthermore, damage to any structural roots may cause an already structurally compromised tree to become hazardous (i.e., a        high risk of uprooting)."

152.    Its reliance on research concerning the regrowth of redwood roots that are premised on situations very different from that which would be presented by the changes in soil composition and structure resulting frpom the highway construction activities.

153.    Based on this flawed and inadequate analysis, the 2015 Tree Report—and by extension the 2017 FONSI—arbitrarily conclude that the Proposed Projects indisputable impacts to the root systems of the Grove's old growth redwood would have have no significant negative consequences.

154.    Neither the 2017 FONSI nor the 2015 Tree Report provide a consolidated set of plans which identifies location of old growth redwood trees and the nature and extent of project work proposed within the root zones of old growth redwood trees.  The 2015 Tree Report is not included as an Attachment to or incorporated by reference in the Project Report or the 2017 FONSI.

155.    The 2017 FONSI states that "[e]xcept for the minor changes and additional studies as noted in this document, all other information in the Final EA and the Supplement remains accurate."  2017 FONSI, at 3.  The other studies which Caltrans identified in the 2017 FONSI as the basis for the 2017 FONSI are: a Biological Assessment for Potential Impacts to Marbled Murrelet (*Brachyramphus marmoratus*), Marbled Murrelet Critical Habitat, and Northern Spotted Owl (*Strix occidentalis caurina*), a Biological Assessment for Potential Impacts to Coho Salmon (*Oncorhyncus kisutch*), Chinook Salmon (*Oncorhynchus tshawytscha*), Steelhead Trout

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                          46

1  (*Oncorhynchus mykiss*), their Designated Critical Habitat, and Essential Fish Habitat Assessment

2  for Pacific Salmon, a Historic Properties Survey Report, a Natural Environment Study

3  Addendum, a Programmatic Section 4(f) Evaluation, Visual Impact Assessment Addendums 3

4  and 4, and Water Quality Assessment Report.  None of these documents are included in the

5  Project Report or the 2017 FONSI; only some are available on Caltrans website.

6       156.   Attachments to the Project Report include the following:

7         •   a May 18, 2017  Cost Estimate, detailing costs associated with proposed

8           work (Attachment F);

9         •   a May 17, 2017 Caltrans Memorandum concerning Current Estimate Right

10           of Way costs (Attachment G);

11         •   a July 2, 2013 Caltrans Transportation Management Plan Update # 5,

12           describing how Caltrans proposes to manage traffic during project

13           implementation (Attachment H);

14         •   "a May 19, 2017 Programming Sheet identifying dates for project

15           implementation (Attachment I);

16         •   "a December 15, 2015 Caltrans Memorandum about an Updated Initial

17           Site Assessment, but without including the actual assessment (Attachment

18           J);

19         •   an October 20, 2014 Caltrans Memorandum recommending different

20           strategies for roadway surface materials (Attachment K);

21         •   "an undated Caltrans Risk Register, which among other things admits that

22           the "sensitive location makes even minor design changes susceptible to

23           major environmental work" (Attachment L); and

24         •   an undated and unsigned Caltrans Storm Water Data Report (Attachment

25           M).

26       157.   Caltrans did not provide any opportunity for the public to review and comment on

27  the Project Report or any of these Attachments, including the 2017 FONSI the 2015 Tree Report.

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT          47

158.    In addition to these documents, it appears Caltrans relies on several other documents to justify its May 22, 2017 Project approval, including:

- Caltrans' March 2015 Construction Noise Analysis;

- A June 18, 2015 letter from the National Park Service regarding potential impacts to the Wild and Scenic Eel River;

- Caltrans' May 9, 2016 Memorandum regarding impacts of Proposed Project on truck volumes and changes in highway character;

- A January 23, 2017 letter from the National Marine Fisheries Service regarding ESA Consultation Concurrence; and

- A March 29, 2017 letter from the U.S. Fish and Wildlife Service regarding Informal Consultation under the ESA for the Marbled Murrelet and the Northern Spotted Owl.

159.    Caltrans did not provide any opportunity for the public to review and comment on these documents, nor did it circulate any of these documents for review under NEPA. Nor are any of these documents part of any final environmental assessment or the 2017 FONSI.

160.    Instead, in the face of clear public controversy and at risk natural resources, without any public scrutiny or conversation, from which Caltrans' analyses and conclusions could be evaluated and properly informed, and without remedying legal errors identified in *Bair I* or its state counterpart, Caltrans acted in a void to re-affirm its 2010 approvals and to once again approve the Richardson Grove Project based on illegitimate analysis and NEPA documentation.  Caltrans failed to evaluate and remedy legal deficiencies related not just in relation to the potential impacts to old growth redwood trees, but also in terms of evaluating significant and cumulative impacts from the road work, on safety, from other projects; failed to consider feasible and viable alternatives; and failed to adequately respond to comments on the 2010 Original EA and the 2013 Supplement.

161.    Caltrans published notice of its approval in the Federal Register on June 5, 2017. *Federal Register*/Vol. 82, No. 106/Monday, June 5, 2017/Notices, [25906].  This action is timely filed.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                    48

## VI.   PLAINTIFFS HAVE COMPLIED WITH ALL PROCEDURAL REQUIREMENTS

### A.   Irreparable Harm and Arbitrary and Capricious Action

162.   At all times mentioned herein, Caltrans has been able to deny the approvals and reject the Original EA/FONSI, Supplement to the Original EA/FONSI, and 2017 FONSI for the Proposed Project.  Notwithstanding such ability, Caltrans has failed and continues to fail to perform its duty to deny and reject the Proposed Project.

163.   If Caltrans is not ordered to withdraw its approval of the Proposed Project, the Original EA/FONSI, Supplement to the Original EA/FONSI, and 2017 FONSI, the People of California, as well as the land, watershed, wildlife, economic, and environmental values subject to and affected by the Proposed Project, would suffer immediate, irreparable, and permanent damage.

164.   Plaintiffs bring this action on the ground that each individual Plaintiff and each organizational Plaintiff's members and staff would suffer irreparable injuries if Defendants' actions herein are not set aside immediately.  Such injuries include, but are not limited to, injuries to Plaintiffs' aesthetic, spiritual, scientific, recreational, and educational interests caused by deterioration of protected State Park land and its environmental setting, damage to ancient redwood groves protected within the State Park, degradation of wildlife and fisheries habitat, including for the marbled murrelet, the northern spotted owl, and threatened anadromous salmonids, impacts associated with noise and light, impacts associated with toxic materials handling and disposal, impacts to air quality, and impacts to the designated Wild and Scenic Eel River.

### B.   Exhaustion of Administrative Remedies

165.   To the extent they legally were required to, Plaintiffs individually and/or through their representatives and members, have performed all conditions precedent to the filing of this Complaint by raising each and every issue known to them before Caltrans in compliance with NEPA, the Department of Transportation Act, the Wild and Scenic Rivers Act, and the APA, including by participating in the public meetings and hearings hosted by Caltrans and submitting written comments.  Plaintiffs, however, do not believe they are required to exhaust their

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                            49

1   administrative remedies, because to attempt to do so would be futile, as Plaintiffs do not have

2   adequate administrative remedies, and/or Plaintiffs lacked a full and fair opportunity to exhaust

3   certain claims.

4   166.   On the same day as the filing of this action, Plaintiffs are serving by mail a copy

5   of the Complaint on the California State Attorney General.

6   **C.   Standing**

7   167.   Plaintiffs are individuals, groups of citizens, taxpayers, and residents of the State

8   of California.  Plaintiffs have participated in the review of the Proposed Project.  Individual

9   Plaintiffs and organizational Plaintiffs' members and staff visit and rely on the natural and other

10  resources of the Richardson Grove Park for their economic livelihood, enjoyment, recreation,

11  education, and spiritual experiences.  Plaintiffs' interests would be concretely and particularly

12  injured by the effects of the Proposed Project on the environment.  Individual Plaintiffs have

13  standing to bring this action on their own behalf, and organizational Plaintiffs have standing to

14  bring this action on behalf of their injured members and staff.

15  **D.   Attorneys' Fees**

16  168.   In pursuing this action, Plaintiffs are entitled to, and Caltrans is responsible for

17  payment of, their reasonable fees, costs, and expenses associated with this litigation pursuant,

18  *inter alia,* to the Equal Access to Justice Act, 28 U.S.C. § 2412, California Code of Civil

19  Procedure § 1021.5, and other authority.

20  **CLAIMS FOR RELIEF**

21  **FIRST CLAIM FOR RELIEF**

22  **(Violation of NEPA)**

23  169.   Plaintiffs incorporate by reference all the allegations contained in the previous

24  paragraphs as though fully set forth herein.

25  170.   NEPA establishes a national policy to "prevent or eliminate damage to the

26  environment and biosphere."  42 U.S.C § 4321.  NEPA recognizes that "the critical importance

27  of restoring and maintaining environmental quality," declares that the federal government has a

28  continuing responsibility to use "all practicable means" to minimize environmental degradation,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1  and directs that "to the fullest extent possible ... the policies, regulations and public laws of the

2  United States shall be interpreted and administered in accordance with the policies set forth in

3  this Act."  42 U.S.C. §§ 4331(a), 4332(1).  NEPA also recognizes the right of each person to

4  enjoy a healthful environment.  42 U.S.C. § 4331(c).  Pursuant to the MOU, Caltrans was

5  obligated to comply with NEPA for highway projects, including the Proposed Project.

6  171.    NEPA Regulations for Implementing the Procedural Provisions of the National

7  Environmental Policy Act are codified at 40 C.F.R. § 1500 *et seq.*  The Federal Highway

8  Administration adopted its own NEPA regulations, codified at 23 C.F.R. Part 771, binding on all

9  agencies which must comply with NEPA, including Caltrans pursuant to the MOU for highway

10  projects, including the Proposed Project.

11  172.    Caltrans has violated these fundamental principles of NEPA in several ways,

12  including, but not limited to, failing to establish the purpose and need for the Project, disclose

13  and evaluate the significant environmental effects, explore and evaluate reasonable alternatives

14  to the Proposed Project, adequately document public comments and concerns and responses to

15  those comments, and failing to prepare an Environmental Impact Statement ("EIS") for the

16  Proposed Project, and issuing and approving a 2017 FONSI which purports to be part of a so-

17  called "Revised EA," which also includes the 2010 Original EA/FONSI and the 2013

18  "Supplement to the Final EA/FONSI,." In violation of NEPA.  40 C.F.R. § 1508.10.

19  WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

20  **SECOND CLAIM FOR RELIEF**

21  **(Violation of NEPA - Purpose and Need)**

22  173.    Plaintiffs incorporate by reference all the allegations contained in the previous

23  paragraphs as though fully set forth herein.

24  174.    NEPA requires that the agency to establish a statement of purpose and need for

25  the proposed action under review.  23 U.S.C. § 139(f); 40 C.F.R. §§ 1508.9(b), 1502.13.

26  175.    Caltrans violated NEPA by failing to provide a valid discussion or document in

27  the Original EA/FONSI or Supplement to the Original EA/FONSI, and 2017 FONSI the purpose

28  and need of the Proposed Project, by among things, failing to: (a) present an adequate description

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                          51

1   of the proposed action; (b) present a clear statement of the objectives that the Proposed Project is

2   intended to achieve, including evidence of safety concerns; (c) document that the Proposed

3   Project was necessary in the absence of safety issues; and (d) involve the public adequately in

4   defining the ultimate purpose and need for the Proposed Project.  Caltrans' failure to provide a

5   clear statement of the purpose of the proposed action included, but was not limited to, its failure

6   to adequately disclose key components of the Proposed Project, such as the engineering and

7   design criteria used to develop and define the Proposed Project, information about and location

8   of tree root structures within the Proposed Project, the acquisition criteria for State Park lands,

9   and the interrelationships among the Proposed Project and other Caltrans STAA truck access

10  projects in Northern California.

11         176.    Further, by jettisoning the original safety rationale for the Proposed Project, and

12  by adopting a project purpose focused solely on STAA truck access, Caltrans improperly defined

13  the Proposed Project's purpose and need so narrowly as to preclude analysis of a reasonable

14  range of alternatives that would avoid significant environmental impacts.

15         WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

16                            **THIRD CLAIM FOR RELIEF**

17                    **(Violation of NEPA - Failure to Evaluate Impacts)**

18         177.    Plaintiffs incorporate by reference all the allegations contained in the previous

19  paragraphs as though fully set forth herein.

20         178.    NEPA requires Caltrans to adequately consider, analyze, and disclose the

21  individual and cumulative environmental impacts of the proposed action and alternatives to it.

22  42 U.S.C. § 4332(2)(c); 23 C.F.R. §§ 771.105, 771.119; 40 C.F.R. §§ 1508.9, 1502.16.

23         179.    Caltrans violated NEPA by issuing and approving the Original EA/FONSI,

24  Supplement to the Original EA/FONSI, and 2017 FONSI which fail to provide the required

25  analysis of individual and cumulative environmental effects of the Proposed Project, including

26  but not limited to, the effects:

27                    a.      on the ancient redwoods which stand in close proximity to the highway

28  throughout the Proposed Project site,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1      b.      on fish and wildlife species and other biological resources, including

2  special status threatened and endangered species such as the marbled murrelet and the northern

3  spotted owl, SONCC coho, CC Chinook, NC Steelhead,  SONCC coho critical habitat, and coho

4  and Chinook salmon essential fish habitat,

5      c.      from tree removal,

6      d.      from increased noise and light (particularly nighttime light) during and

7  after construction,

8      e.      from toxicity to the environment, including from the movement and

9  storage of lead-contaminated soil and other toxic materials,

10      f.      from harm to the old-growth redwoods due to excavation and movement

11  of lead-contaminated soil,

12      g.      the effect on the forest ecosystem from disturbing a road system without

13  knowing and understanding the prior construction and the extent to which the road bed has never

14  been entirely removed and altered as proposed for the Proposed Project,

15      h.      on greenhouse gas emissions,

16      i.      on cultural resources,

17      j.      on park, recreation, wildlife, or historic areas, and changes to vehicular

18  and pedestrian access, and

19      k.      from the growth-inducing effects or opportunities associated with

20  advancing goods movement throughout Humboldt, Mendocino, and Del Norte counties.

21      180.    Caltrans also violated NEPA because the Proposed Project's Original EA/FONSI,

22  Supplement to the Original EA/FONSI, and 2017 FONSI fail to adequately identify and discuss

23  cumulative impacts related to the Proposed Project, including, but not limited to:

24      a.      the impacts associated with logging redwoods and other trees in the area,

25      b.      the cumulative effects on wildlife and protected species from removing

26  trees and opening the forest along Highway 101,

27      c.      the traffic and its related noise and air quality impacts in the City of

28  Eureka and other areas of Humboldt County from STAA trucks,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                    53

1           d.      proposed development projects and Humboldt Bay port development

2 which require STAA truck access, and

3           e.      increased truck traffic associated with other Caltrans STAA access

4 projects designed to create a STAA loop from the Del Norte County in the north to the

5 Richardson Grove State Park in the south.

6           f.      increased truck traffic from projects which Caltrans has failed to consider,

7 including the truck hauling of waste from Humboldt County to Mendocino County on Highway

8 101.

9        181.    Caltrans violated NEPA by issuing a Draft EA and which was fundamentally and

10 dramatically deficient, as noted by numerous comments, including those by the State Parks, the

11 California State Parks Foundation, the Natural Resources Defense Council, EPIC, CATs, and

12 many others.  These comments repeatedly stated that, in the absence of legally required

13 information and analysis concerning the Proposed Project, the public could not evaluate the

14 Proposed Project's potential for impacts, including impacts to the State Park, the ancient

15 redwoods within Richardson Grove, and other resources.  Caltrans' Draft EA was so deficient it

16 rendered public comment effectively meaningless, in violation of NEPA requirements to provide

17 members of the public with sufficient environmental information to permit them to weigh in and

18 to inform agency decision-making.

19        WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

20                        **FOURTH CLAIM FOR RELIEF**

21           **(Violation of NEPA - Failure to Evaluate Alternatives)**

22        182.    Plaintiffs incorporate by reference all the allegations contained in the previous

23 paragraphs as though fully set forth herein.

24        183.    NEPA requires that agencies rigorously explore and objectively evaluate all

25 reasonable alternatives to the proposed action.  42 U.S.C. § 4332(2)(C)(iii); 23 C.F.R § 771.105;

26 40 C.F.R. §§ 1508.9, 1502.14.  A proper analysis of alternatives requires appropriate mitigation

27 measures not already included in the proposed action or alternatives.  See 23 C.F.R. §

28 771.119(b); 40 C.F.R § 1502.14(f).

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                        54

184.   Caltrans violated NEPA because the Original EA/FONSI, Supplement to the Original EA/FONSI, and 2017 FONSI contain an inadequate range of alternatives.  Among other reasonable alternatives, Caltrans failed to consider reasonable alternatives that would reduce the significant adverse environmental effects of the Proposed Project, including but not limited to:

a.   an alternative to altering and cutting roots and compacting the root systems of ancient redwoods averaging more than seven feet in diameter,

b.   changing the Proposed Project design to avoid certain redwoods,

c.   reducing the speed limit through the Grove in light of the fact that certain STAA trucks are already permitted to travel through the Grove and there is no evidence of safety impacts related to such transport,

d.   providing uniform STAA truck access without disturbing the existing road through the Richardson Grove State Park,

e.   provide a viable business transfer service to switch out cabs on trucks to bring them through the Grove, and

f.   short sea shipping in lieu of trucking.

185.   Caltrans also violated NEPA by failing to provide the required appropriate mitigation measures, including but not limited to measures that would:

a.   protect the ancient redwoods and their root systems,

b.   not touch any redwoods or their root systems within the Richardson Grove State Park that are 30 inches or larger in diameter,

c.   not allow any roots of redwoods to be cut,

d.   document the presence or absence of protected species and other biological resources and fully analyze the potential significant environmental effects associated with the Proposed Project before the Proposed Project commences,

e.   avoid impacts to cultural resources, and

f.   avoid impacts associated with excavation, handling, and disposal of lead-laden soils.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                              55

**FIFTH CLAIM FOR RELIEF**

**(Violation of NEPA - Response to Comments)**

186.    Plaintiffs incorporate by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

187.    NEPA requires that the agency present and respond to comments for a proposed major federal action significantly affecting the quality of the human environment. 40 C.F.R. § 1503.2.  The Richardson Grove Project is a major federal action significantly affecting the quality of the human environment.

188.    Numerous comments submitted to Caltrans throughout the initial environmental review process and for the Supplement identified the Proposed Project's significant impacts. Yet, Caltrans either ignored these comments or glossed over their substance with conclusory responses.  Due to Caltrans' disregard, the Proposed Project's identified potential impacts related to ancient redwoods, fish and wildlife, water quality, air quality, cultural resources, toxic materials, and plant populations, as well as its cumulative impacts, must therefore still be considered significant.  Caltrans has not successfully mitigated the impacts of the Proposed Project in the manner or to the extent required by law.

189.    Caltrans violated NEPA by failing to document and respond to comments in the Final EA and the Supplement Responses regarding:

a.    the Proposed Project purpose and need,

b.    the Proposed Project description,

c.    Project impacts related to ancient redwoods, traffic, noise, light, water quality, air quality, cultural resources, toxic materials, protected species, and growth inducement,

d.    the lack of adequate study and documentation to support the Original EA/FONSI, and Supplement to the Original EA/FONSI,

e.    the inadequate Section 4(f) analysis,

f.    the lack of a valid and adequate public review and comment process,

g.    the need for reissuance and recirculation of the Draft EA because of its inconsistencies and lack of disclosure and analysis,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

h.      the lack of response to scientific data and evidence submitted, and

i.      Other significant arguments made by the *Bair* plaintiffs.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SIXTH CLAIM FOR RELIEF

### (Violation of NEPA - Failure to Circulate EA Prior to Adoption of FONSI)

190.    Plaintiffs incorporate by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

191.    Under certain circumstances, NEPA requires that an EA must be available to the public for a minimum of 30 days before the finding of no significant impact is made and the action is approved.  40 C.F.R. §§ 1505.1, 1501.4(e)(2).

192.    The Proposed Project, due to its significant effects on the environment, is the type of project that normally would require an EIS.  This Project also is without precedent, in that it involves widening and realigning a state highway through an ancient redwood grove, in a popular California State Park, in a manner that could damage the root systems of the ancient trees and degrade park resources.  Accordingly, Caltrans was required to make the Original EA and the so-called "Revised EA" available for 30 days prior to adoption of a FONSI pursuant to 40 C.F.R. § 1501.4(e)(2)(i) and (ii).

193.    Caltrans also violated NEPA by failing to provide the required 30-day public review period for the Original EA/FONSI and Supplement and 2017 FONSI – characterized by Caltrans as a "Revised EA" -- which included substantial new impacts, and increased the severity of existing impacts from the Proposed Project, in a manner that significantly altered the scope of the Proposed Project's impacts without providing effective mitigation.  These include, but are not limited to:

a.      more than doubling the number of trees, averaging 7 feet in diameter, whose structural root zone would be impacted by the Proposed Project,

b.      changing the location and nature of the retaining wall to now serve as roadbed, without providing any analysis or mitigation for that change or engaging Section 7 consultation under the Wild and Scenic Rivers Act,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                              57

1          c.      eliminating a mitigation measure intending to mitigate effects of

2  impervious fill, and

3          d.      proposing new methods of culvert replacement without any analysis of the

4  impacts of the change.

5       WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

6                      **SEVENTH CLAIM FOR RELIEF**

7            **(Violation of NEPA - Failure to Prepare an EIS)**

8       194.    Plaintiffs incorporate by reference all the allegations contained in the previous

9  paragraphs as though fully set forth herein.

10      195.    NEPA requires all agencies to prepare a detailed EIS on every proposal for a

11  major federal action significantly affecting the quality of the human environment.  42 U.S.C. §

12  4322(2)(c).  Under NEPA, an agency must prepare an EIS when an action may have a significant

13  environmental effect, 40 C.F.R. § 1508.3, or where there is a substantial question raised as to

14  whether an action may have an environmental effect.  The EIS must contain a detailed discussion

15  of environmental impacts, 40 C.F.R. §1502.16, and of alternatives.  40 C.F.R. § 1502.14.

16      196.    The Proposed Project is a major federal action significantly affecting the quality

17  of the human environment for which Caltrans must prepare an EIS.  It is an action requiring an

18  EIS because, among other things:

19          a.      The Proposed Project may or will have a significant environmental effect,

20  as outlined in this First Amended Complaint, within the meaning of the criteria set forth in 40

21  C.F.R. § 1508.27,

22          b.      The Proposed Project will have more than a minimal impact on lands

23  protected under Section 4(f) of the Department of Transportation Act, and

24          c.      The Draft EA, Original EA/FONSI, Supplement to the Original

25  EA/FONSI, and the 2017 FONSI, in conjunction with Caltrans' responses to comments and

26  other information in the record, raise a substantial question as to whether the Proposed Project

27  may have a significant effect on the environment.

28       WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT          58

## EIGHTH CLAIM FOR RELIEF

### (Violation of Section 4(f))

197. Plaintiffs incorporate by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

198. Section 4(f) of the Department of Transportation Act requires specific consideration and analysis of environmental impacts of transportation activities that are proposed to take place in parks, recreation areas, wildlife refuges, and other public lands or areas with historical significance, and prohibits an agency from using any public land meeting this criteria unless there has been a determination that "(1) there is no feasible and prudent alternative to the use of such land, and (2) such program includes all possible planning to minimize harm ... resulting from such use." 23 U.S.C. § 138, 23 C.F.R. Part 774. The "no feasible and prudent alternative" 4(f) standard allows less discretion for an agency to reject alternatives than under NEPA.

199. Caltrans' Proposed Project includes acquisition of and impact on lands within the Richardson Grove State Park. Caltrans used a "programmatic" Section 4(f) determination for the Proposed Project, rather than conduct a complete analysis, claiming among other things that the Proposed Project is a federally funded improvement of an existing highway and that the amount and location of land used does not impair the use of the remaining section 4(f) land, i.e. the rest of the Richardson Grove State Park. By using the programmatic Section 4(f) determination, Caltrans limited its analysis of alternatives to three standard alternatives: (1) no build option, (2) an improvement of the highway without using the Section 4(f) land, or (3) building a new facility on an alternative location without using the Section 4(f) land. Caltrans rejected all three alternatives in its Original EA/FONSI.

200. Caltrans violated its obligations under Section 4(f) by, among other things, using the "programmatic" Section 4(f) and by failing to properly evaluate feasible and prudent alternatives to the proposed action, which include and are not limited to:

a. an alternative to altering and cutting roots and compacting the root systems of ancient redwoods averaging more than seven feet in diameter,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                    59

1        b.     changing the Proposed Project design to avoid certain redwoods,

2        c.     reducing the speed limit through the Grove in light of the fact that certain

3 STAA trucks are already permitted to travel through the Grove and there is no evidence of safety

4 impacts related to such transport, and

5        d.     providing uniform STAA truck access without disturbing the existing road

6 through and land of the Richardson Grove State Park.

7        201.    Caltrans also violated Section 4(f) by failed to include all possible planning to

8 minimize harm, and to maintain or enhance the natural beauty of the lands traversed, including

9 by not limited to:

10       a.     protect the ancient redwoods and their root systems,

11       b.     not touch any redwoods or their root systems within the Richardson Grove

12 State Park that are 30 inches or larger in diameter,

13       c.     not allow any roots of redwoods to be cut,

14       d.     document the presence or absence of protected species and other

15 biological resources and fully analyze the potential significant environmental effects associated

16 with the Proposed Project before the Proposed Project commences,

17       e.     avoid impacts to cultural resources, and

18       f.     avoid impacts associated with excavation, handling, and disposal of lead-

19 laden soils.

20       WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

21                    **NINTH CLAIM FOR RELIEF**

22            **(Violation of Wild and Scenic Rivers Act)**

23       202.    Plaintiffs incorporate by reference all the allegations contained in the previous

24 paragraphs as though fully set forth herein.

25       203.    Section 7 of the Wild and Scenic Rivers Act imposes a duty on federal agencies to

26 protect the free-flowing condition and other values of designated rivers.  Pursuant to the MOU,

27 Caltrans assumed the Federal Highway Administration's obligation to comply with the Wild and

28 Scenic Rivers Act.  "[N]o department or agency of the United States shall assist by loan, grant,

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1  license or otherwise in the construction of any water resources project that would have a direct

2  and adverse effect on the values for which such river was established . . ." 16 U.S.C. § 1278 (a).

3  Absent congressional intervention, projects may not be authorized or commenced which have an

4  adverse effect on the values for which the river is designated.

5      204.    Implementation of Section 7 requires rigorous and consistent evaluation

6  procedures to protect river resources, and the determination as to effect of the project lies with

7  one of the four federal river-administering agencies.  The National Park Service is the federal

8  river-administering agency for the South Fork Eel River.

9      205.    The Proposed Project is a water resources project for which Section 7 consultation

10  with and determination by the National Park Service is required.  The Proposed Project is within

11  one mile of the federally designated wild and scenic Eel River, and will have a direct and adverse

12  effect on the values for which the river was designated.  In violation of Section 7, Caltrans failed

13  to consult with and seek a Section 7 determination from the National Park Service when Caltrans

14  changed the project scope and moved the retaining wall closer to the Eel River and just upstream

15  from a chronic slip-out, requiring excavation to 20 feet, removal of large, native trees, and

16  deposition of lead laden soils.

17      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

18  **<u>TENTH CLAIM FOR RELIEF</u>**

19  **<u>(Violation of APA)</u>**

20      206.    Plaintiffs incorporate by reference all the allegations contained in the previous

21  paragraphs as though fully set forth herein.

22      207.    The APA entitles a party to seek judicial review of an agency action where a legal

23  wrong is alleged and the party alleging the violation is adversely affected or aggrieved by the

24  agency action.  Pursuant to 5 U.S.C. § 706(2)(A), a reviewing court shall hold unlawful and set

25  aside an agency action found to be arbitrary, capricious, or otherwise not in accordance with the

26  law.  In addition, pursuant to 5 U.S.C. § 706(2)(D), a reviewing court shall hold unlawful and set

27  aside agency action, findings, and conclusions found to be without observance of procedure

28  required by law.  Defendants acted illegally for all the reasons set forth above.

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT    61

208.   Caltrans acted illegally and in violation of the APA by approving and adopting the Original EA/FONSI, Supplement to the Original EA/FONSI, the 2017 FONSI, and the Proposed Project each of which does not fully comply with NEPA and Section 4(f) of the Department of Transportation Act as set forth above, and which together are inconsistent, contradictory, and prevent meaningful understanding and review by decision-makers, the public or the Court.

209.   Due to Defendants' knowing and conscious failure to comply with NEPA and Section 4(f), Plaintiffs have suffered legal wrongs because of agency action and are adversely affected and aggrieved by agency action within the meaning of the APA.

210.   Defendants' knowing and conscious failure to comply with NEPA and Section 4(f), is arbitrary, capricious, and an abuse of discretion, not in accordance with law, in excess of statutory jurisdiction, and without observance of procedure required by law within the meaning of the APA, 5 U.S.C. § 706(2), and should therefore be declared unlawful and set aside by this Court.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## ELEVENTH CLAIM FOR RELIEF

### (Declaratory Judgment Act)

211.   Plaintiffs incorporate by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

212.   Pursuant to the MOU executed between Caltrans and the US DOT Secretary, in December, 2016, under the authority of 23 U.S.C. § 327, Caltrans expressly: consented to the jurisdiction of the federal courts for the "compliance, discharge and enforcement of any responsibility of the U.S. DOT Secretary assumed by the by Caltrans under [the] MOU," MOU § 4.3.1; accepted responsibility "for the compliance, discharge and/or enforcement of any responsibilities assigned by the USDOT Secretary and assumed by Caltrans under this MOU" and waives the State's immunity under the Eleventh Amendment of the U.S. Constitution to address "matters arising out of the MOU," *id.* § 4.3.1;  is subject to the same procedural or substantive requirements that apply to the USDOT Secretary in carrying out its responsibilities;

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

1   *id.*, § 5.1.1.; and is "responsible for opposing party's attorney's fees and costs if a court awards

2   those costs to an opposing party, or in the event those costs are part of a settlement agreement,"

3   *id.*, § 6.2.2.

4       213.   23 U.S.C. § 327 further provides *inter alia* that: "A civil action [such as this,

5   pursued against a state agency that has assumed the FHWA's responsibilities under Section 327]

6   shall be governed by the legal standards and requirements that would apply in such a civil action

7   against the Secretary had the Secretary taken the actions in question," 23 U.S.C. § 327 (d)(2); "A

8   State shall assume responsibility under this section subject to the same procedural and

9   substantive requirements as would apply if that responsibility were carried out by the Secretary,"

10   23 U.S.C. § 327(a)(2)(C); "A State that assumes responsibility under subsection (a)(2) shall be

11   solely responsible and solely liable for carrying out, in lieu of the Secretary, the responsibilities

12   assumed under subsection (a)(2)," 23 U.S.C. § 327(e); and that a State to whom federal highway

13   project administration obligations have been delegated under the section, can use federal funds

14   apportioned to it, "for attorneys' fees directly attributable to eligible activities associated with the

15   project," 23 U.S.C. 327(a)(2)(G).

16       214.   California Code of Civil Procedure § 1021.5 further provides:  "a court may

17   award attorneys' fees to a successful party against one or more opposing parties in any action

18   which has resulted in the enforcement of an important right affecting the public interest if: (a) a

19   significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public

20   or a large class of persons, (b) the necessity and financial burden of private enforcement, or of

21   enforcement by one public entity against another public entity, are such as to make the award

22   appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if

23   any."

24       215.   Plaintiffs contend that Caltrans, under the foregoing and/or other law is liable and

25   responsible for Plaintiffs' attorneys' fees and costs in this action.

26       216.   Caltrans denies its responsibility to pay Plaintiffs' attorneys' fees and costs in this

27   action.

28

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                     63

217.    An actual, present and justiciable controversy has arisen between Plaintiffs and Defendants Caltrans concerning Caltrans responsibility to pay Plaintiff's attorneys fees and costs in this action..

218.    Plaintiffs seek declaratory judgment from this Court that Caltrans, under the foregoing and/or other law is legally liable and responsible for Plaintiffs' attorneys' fees and costs in this action and Plaintiffs have corresponding legal rights.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## TWELFTH CLAIM FOR RELIEF

### (Injunctive Relief)

219.    Plaintiffs incorporate by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

220.    The Proposed Project as approved by Caltrans would cause irreparable injury and harm to State Park resources, to Plaintiffs, and to the public at large.  Its significant environmental impacts have not been adequately evaluated, much less mitigated to a less than significant level, and feasible and reasonable alternatives have not been properly evaluated by Caltrans, as required by law and as set forth in this First Amended Complaint.

221.    The errors and arbitrary and capricious conduct by Caltrans constitute the bases for injunctive relief to prevent this irreparable injury pursuant to Rule 65 of the Federal Rules of Civil Procedure and other applicable law.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, and each of them, pray for judgment and further relief as follows:

1.    Declare that Defendants have violated NEPA and Federal Highway statutes as alleged herein;

2.    Declare that Defendants' violation of NEPA and the Federal Highway statutes are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, under the APA;

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                           64

3.     Declare that Defendants have failed to observe procedures required by law in their Project approval, Original EA/FONSI, Supplement to the Original EA/FONSI, and 2017 FONSI, including the Section 4(f) Evaluation, and all related findings and approvals;

4.     Declare that Caltrans is legally liable and responsible for Plaintiffs' attorneys' fees and costs in this action and Plaintiffs have corresponding legal rights.

5.     Set aside Defendants' approval of the Richardson Grove Operational Improvement Project , Original EA/FONSI, Supplement to the Original EA/FONSI, and 2017 FONSI, including the Section 4(f) Evaluation, and all related findings and approvals, and require Defendants to follow federal statutes and regulations, including NEPA and Section 4(f) of the Department of Transportation Act of 1966, 23 U.S.C. § 138, 49 U.S.C. § 309, and any implementing regulations in any review of and decision for the Proposed Project;

6.     Grant interlocutory and permanent injunctive relief enjoining Defendants, and each of them from engaging in any activity pursuant to the Proposed Project until the Proposed Project complies with the *Bair I Order*, and all applicable federal regulations and statutes, including requirements of NEPA and the Department of Transportation Act of 1966;

7.     Award costs of suit herein, including attorney fees and expert witness fees, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, California Code of Civil Procedure 1021.5, or other authority; and

8.     Grant such other and further equitable or legal relief as the Court deems just and proper.

DATED: November 2, 2017          **GROSS & KLEIN LLP**


By:      *   /S/ Stuart G. Gross   *
         **STUART G. GROSS**
         *Attorneys for Plaintiffs*

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

# DECLARATION OF SERVICE

I, SHARON E. DUGGAN, declare:

I am, and was at the time of the service hereinafter mentioned over the age of eighteen and not a party to the above-entitled cause. My business address is 336 Adeline Street, Oakland, California 94607 and I am a resident of or employed in the County of Alameda, California.

On November 2, 2017 I served the attached Complaint on the California Attorney General addressed as follows:

XAVIER BECERRA
California State Attorney General
455 Golden Gate Avenue Suite 11000
San Francisco, CA 94102

XXX **BY FIRST CLASS MAIL** by depositing a sealed envelope in the United States Postal Service in the ordinary course of business on the same day it is collected in Oakland, California postage fully prepaid.

____ **BY FACSIMILE MACHINE** by personally transmitting a true copy thereof via a facsimile machine at approximately ____ a.m./p.m. on _____.

____ **BY FEDERAL EXPRESS or UNITED PARCEL SERVICE** overnight delivery by personally depositing in a box or other facility regularly maintained by Federal Express or United Parcel Service, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents.

____ **BY HAND DELIVERY** by personally delivering a true copy thereof in an envelope addressed to the parties identified above at the addresses given for those parties.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on November 2, 2017 in Oakland, California.

*Sharon Duggan*

SHARON E. DUGGAN

GROSS & KLEIN LLP
THE EMBARCADERO
PIER 9, SUITE 100
SAN FRANCISCO, CA
94111

COMPLAINT                                                                                                          66