United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BESS BAIR, et al.,

    Plaintiffs,

  v.

CALIFORNIA STATE DEPARTMENT OF
TRANSPORTATION, et al.,

    Defendants.

No. C 17-06419 WHA

**ORDER ON REMEDY**

    This order requires Caltrans to prepare an EIS if it still wishes to proceed with the road project through Richardson Grove State Park.

    A previous order detailed the long history of this action (Dkt. No. 107). In brief, various local residents and environmental groups object to a California Department of Transportation proposal aimed at widening Highway 101 where it curves through the Richardson Grove of ancient old-growth redwoods. The project sought to provide extra-long trucks more direct access to Humboldt county.

    The National Environmental Policy Act requires agencies undertaking "major" projects to take a hard look at the project's environmental consequences. 42 U.S.C. § 4332(C). To satisfy this "hard look," as our court of appeals has called it, the agency must develop an environmental impact statement, a comprehensive study that rigorously assesses the

environmental effects of the project. The underlying regulations, however, permit the agency to delete this requirement if, based on a preliminary "environmental assessment," the agency determines that the project would have "no significant impact" on the environment. 40 C.F.R. § 1508.9.

For the road project in question, after many years of litigation, the Court finds that Caltrans has bent over backwards to fudge the facts to avoid an EIS. In eight years, Caltrans has issued three FONSIs based on three separate EAs. Not one EA or FONSI has withstood scrutiny. Caltrans has never issued an EIS.

Most recently, in May 2019, an order granted summary judgment in favor of plaintiffs and against Caltrans, finding that the third EA/FONSI had not been fully informed or well-considered (Dkt. No. 107). Specifically, the EA/FONSI glossed over four items. *First*, Caltrans had not considered the impact of added cement paving directly over the root health zones on the redwoods' oxygen intake. *Second*, Caltrans had not adequately explained why it defied the California State Parks Handbook not to construct in the root zones of the redwoods. *Third*, the impact of the noise from the extra long trucks and added traffic on visitor enjoyment of the park remained a mystery. *Fourth*, no consideration had been given as to the potency of direct strikes to roadside redwoods from these more massive trucks. These issues rendered the agency decision not to prepare an EIS arbitrary and capricious.

The order requested further briefing to determine the remedy, namely whether to remand for a fourth EA versus order an EIS. Having received this supplemental briefing (Dkt. Nos. 110, 111, 113, 114), this order follows.

An agency must be required to produce an EIS when there are "substantial questions whether [the] project may have a significant effect." *Ocean Advocates v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 864–65 (9th Cir. 2005) (citations omitted). The Council on Environmental Quality regulations define significance by context and intensity. 40 C.F.R. 1508.27. To evaluate context, an agency must address the long-term and short-term interests of the locality and society as a whole. 40 C.F.R. § 1508.27(a). To evaluate intensity, an agency must look at the severity of the impact.

2

Ten factors define intensity. In some circumstances, the presence of just one factor necessitates an EIS. *Ocean Advocates*, 402 F.3d at 865. Here, substantial questions exist as to *four* of these factors. This order therefore holds Caltrans must prepare an EIS.

### 1. 40 C.F.R. § 1508.27(b)(3).

Substantial questions have been raised as to "unique characteristics of the geographic area such as proximity to historic or cultural resources." 40 C.F.R. § 1508.27(b)(3). Richardson Grove State Park is a unique geographic area. Coastal old-growth redwood trees are exceedingly scarce and the grove is designated as a park because of its unique features. The park hosts some of the last remaining old-growth redwoods in the world. To quote Professor Edward Sturgeon:

> One of the most unique tree species in the world, redwood (Sequoia sempervirens (D.Don) (Endl.), is impressive because of the great size and age attained at maturity. The redwood trees are found in a narrow strip of land along this Northern California coast from Monterey County to Oregon. These trees attract tourists and visitors from all the states of the nation and from foreign countries.

(Sturgeon 1964) (2017 AR 1146) (internal citation omitted). These old-growth redwoods can be thousands of years old and 300 feet tall (*ibid*.). Moreover, "the name 'Richardson Grove' became synonymous with the redwoods" (Hawk 2004) (2017 AR 1763).

The project will subject 72 old-growth trees in the park to cuts and fills to their roots in their structural root zones (and 103 old-growth trees in the park in their root health zones). At least two old-growth trees *in the park* will have over half their root health zones paved over (a third old-growth tree outside the park will also have over half its root health zone paved over). The administrative record establishes there is a substantial question as to whether these two old-growth redwoods can survive such a high percentage of root-zone paving. A substantial question therefore exists as to whether these ancients will be compromised due to this proposal. This factor weighs in favor of an EIS.

### 2. 40 C.F.R. § 1508.27(b)(4).

This factor weighs "the degree to which the effects on the quality of the human environment are likely to be highly controversial." 40 C.F.R. § 1508.27(b)(4). A project is highly controversial if there is "a substantial dispute about the size, nature, or effect of [a] major

[f]ederal action." *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1240 (9th Cir. 2005) (citations and original brackets omitted).

Here, a substantial dispute exists as to the effect of this project. On the one hand, the California State Parks Handbook categorically cautioned against construction in the structural root zones of these ancients. Specifically, the California State Parks Handbook warned that "[t]here should be no construction activities in the Structural Root Zone of a protected tree . . . this will shorten the useful life of the tree in the developed area by reducing vigor and introducing root disease" (2017 AR 991). In addition, Professor Edward Sturgeon provided in a 1964 report relied upon by Caltrans in the administrative record that "coast redwood is evidently not seriously affected by paving *where it does not cover more than half the trees' root zone*" (2017 AR 1163) (emphasis added). (The project would pave over half the root zone of three old-growth redwoods.)

On the other hand, however, an expert for Caltrans, Arborist Dennis Yniguez, stated that his "professional opinion [wa]s that implementation of the [project] would not have any substantial detrimental effect on individual old-growth redwoods (*Sequoia sempervirens*) or the overall health of the stand of redwoods in Richardson Grove" (2017 AR 4305). In his report, Arborist Yniguez quoted Professor Sturgeon, including the aforementioned science pertaining to root-zone paving (2017 AR 4308–09). Yet, Arborist Yniguez ignored the point in his analysis. He also did not address whether the life of the tree would be shortened due to the problem. Instead, Arborist Yniguez generally wrapped himself in a general answer: the generic resilience of the redwood. Arborist Yniguez based his *ipse dixit* opinion on, among other things: "3 decades of experience evaluating redwoods as a practicing and consulting arborist," "extensive review of the scientific literature on coast redwood biology, ecology, and resilience," "multiyear examination of old-growth redwoods at Richardson Grove State Park, including a helicopter overflight session to evaluate tree crowns," and "consultation with California Department of Transportation (Caltrans) engineers and biologists" (2017 AR 4305).

Our court of appeals required an EIS in a similar situation involving redwoods. In *Sierra Club v. U.S. Forest Serv.*, our court of appeals held that nine timber sales by the Forest Service

4

required preparation of an EIS. 843 F.2d 1190, 1191 (9th Cir. 1988). Five of the sales contained groves of giant sequoia redwoods. *Id*. at 1192. Under that project, all vegetation except the giant sequoias would be removed. *Ibid*. Like the agency in this action, the agency there found the project would result in no significant impacts due to the regeneration ability of the redwoods. Plaintiffs challenged the action as highly controversial. *Id*. at 1193. The panel cited to one particular authority on giant sequoias, who opined that the proposed actions had the potential to adversely affect the sequoias, which are "world-renowned for their size and longevity," and "priceless biological resources." *Ibid*. Our court of appeals concluded that this was "precisely the type of controversial action for which an EIS must be prepared." *Ibid*. (Internal quotation marks omitted).

So too here. The administrative record presents conflicting authorities. The California State Park Handbook/Professor Sturgeon both indicate this proposal will adversely affect the redwoods. Arborist Yniguez opined it would not. This disagreement weighs in favor of an EIS.

### 3. 40 C.F.R. § 1508.27(b)(5).

Substantial questions have been raised as to the "degree to which the possible effects on the human environment are highly uncertain or involve unique or unknown risks." 40 C.F.R. § 1508.27(b)(5). NEPA regulations "do not anticipate the need for an EIS anytime there is *some* uncertainty, but only if the effects of the project are 'highly' uncertain." *Envtl. Prot. Info. Ctr. v. U.S. Forest Serv.*, 451 F.3d 1005, 1011 (9th Cir. 2006).

The project's impact on public enjoyment of Richardson Grove State Park is highly uncertain. Specifically, the increase in truck traffic caused by this project remains unknown. So too does the increase in noise due to the truck traffic. We must remember that the whole point of this project is to increase the amount of truck cargo through Richardson Grove State Park. "The State of California has declared that these parks are established to make available areas of original redwood forest for the inspiration and enjoyment of the people" (Sturgeon 1964) (2017 AR 1147).

Further collection of noise and traffic data is needed to understand the impact this project will have on public enjoyment of the park. An EIS "is mandated 'where uncertainty may be

5

resolved by further collection of data, or where the collection of such data may prevent speculation on potential . . . effects.' " *Barnes v. U.S. Dep't of Transp.*, 655 F.3d 1124, 1140 (9th Cir. 2011) (quoting *Native Ecosystems Council*, 428 F.3d at 1240). This factor mandates an EIS.

### 4. 40 C.F.R. § 1508.27(b)(8).

Substantial questions have been raised as to the "degree to which the action . . . may cause loss or destruction of significant . . . cultural[ ] or historical resources." 40 C.F.R. § 1508.27(b)(8). There is no doubt that redwoods are culturally significant. Redwoods have long starred in American culture. For example, John Steinbeck once wrote:

> The redwoods, once seen, leave a mark or create a vision that stays with you always. No one has ever successfully painted or photographed a redwood tree. The feeling they produce is not transferable. From them comes silence and awe. It's not only their unbelievable stature, nor the color which seems to shift and vary under your eyes, no, they are not like any trees we know, they are ambassadors from another time.

John Steinbeck, *Travels with Charley: In Search of America* 187—88 (1962). The administrative record further demonstrates the particular significance of redwoods to California: "the tree is so spectacular that it has come to symbolize the grandeur and uniqueness of California itself" (Del Tredici 1999) (2017 AR 1674). Dr. Willis Linn Jepson poetically captured this relationship:

> The writer of these lines is a Californian. He was rocked by a pioneer mother in a cradle made of Redwood. The house in which he lived was largely made of Redwood. His clothing, the books of his juvenile library, the saddle for his riding pony were brought in railway cars chiefly made of Redwood, running on rails laid on Redwood ties, their course controlled by wires strung on Redwood poles. . . . He went to school in a Redwood school house, sat at a desk made of Redwood and wore shoes the leather of which was tanned in Redwood vats. Everywhere he touched Redwood. Boxes, bins, bats, barns, bridges, bungalows were made of Redwood. Posts, porches, piles, pails, pencils, pillars, paving-blocks, pipe lines, sometimes even policemen, were made of Redwood.

(*ibid.*).

Yet, this highway expansion project may degrade this heritage. Already, since the 1920s, the redwood landscape has markedly diminished. Per one study in the administrative record, this has been due to projects like the one proposed here by Caltrans. "If you were to travel up and down the highways of Northern California . . . you would be astonished and disappointed to find that many of these places are now gone. *They were victims of highway expansion*, changing social habits, and economic progress" (Hawk 2004) (2017 AR 1762) (emphasis added). This factor weighs in favor of an EIS.

*         *         *

It is true that an agency's determination that a particular project does not require the preparation of an EIS is to be upheld unless unreasonable. *Foundation for N. Am. Wild Sheep v. U.S. Dep't of Agric.*, 681 F.2d 1172, 1177 (9th Cir. 1982). The process in question, however, has not been reasonable.

After eight years of litigation, the Court is convinced and so finds that Caltrans has been bound and determined from the outset, regardless of the source, to arrive at a FONSI and thus avoid the scrutiny of an EIS. In 2010, Caltrans dodged an EIS by releasing an EA which downplayed the effect of the proposed cuts and fills. After that was set aside, Caltrans wrapped itself and the project in the theory of the extraordinary resilience of redwoods, meaning no matter what the injury, the redwoods would survive. This shortcut did not work either. Caltrans never gave the fair "hard look" required by NEPA but resorted to cherry picking the science to arrive at a preordained conclusion.

Had Caltrans done an honest EIS back in 2010, this project could have been over and done with by now. Contrary to popular belief, NEPA allows projects that will destroy our environment so long as those destructions are disclosed in advance and the project goes forward with our eyes wide open. With an honest hard look, Caltrans could have decided to push ahead with the road project and taken the heat for the adverse hazards. Instead, Caltrans has wasted eight years trying to find an easy way around the NEPA requirement.

At long last, the Court now orders that Caltrans stop trying to skate by with an EA/FONSI and that Caltrans prepare a valid EIS. Please do not try to systematically minimize the adverse environmental consequences and to cherry-pick the science.

The prior order laid out the nightmarish "administrative record" compiled by Caltrans. This order requires Caltrans to compile a fresh administrative record for the EIS with no incorporations by reference. Old exhibits may be re-used only if they are renumbered and inserted fresh into the new record (but be aware of the separate danger in using stale evidence).

Caltrans remains enjoined from proceeding with any work on the ground in connection with this project until finalization of a proper EIS.

**IT IS SO ORDERED.**

Dated: June 27, 2019.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE